**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Rameek HUDSON, Appellee.**

Superior Court of Pennsylvania.

Submitted Feb. 18, 2014.
Filed May 30, 2014.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

David M. Walker, Philadelphia, for appellee.

BEFORE: SHOGAN, OTT and PLATT *, JJ.

OPINION BY SHOGAN, J.:

██ The Commonwealth of Pennsylvania ("the Commonwealth") appeals from the order entered on January 8, 2013, that granted the motion to suppress filed by Rameek Hudson ("Appellee").[1] The trial court asserts that the appeal should be

---

* Retired Senior Judge assigned to the Superior Court.

1. The Commonwealth may appeal an interlocutory order suppressing evidence when it provides a certification with its notice of appeal that the order terminates or substantially handicaps the prosecution. *Commonwealth v. Whitlock,* 69 A.3d 635, 636 n. 2 (Pa.Super.2013); Pa.R.A.P. 311(d). The Commonwealth provided the required certification. Notice of Appeal, 2/7/13.

quashed due to the ·Commonwealth's subsequent filing of a *nolle prosequi,* whereby it dismissed all charges against Appellee. As discussed in detail below, we conclude that the *nolle prosequi* was a nullity pursuant to Pa.R.A.P. 1701, it having been filed after the Commonwealth filed its notice of appeal. Accordingly, this appeal is properly before our Court, and after careful review, we affirm the order granting Appellee's motion to suppress.

On July 26, 2011, Philadelphia Police Officers Gregory Caputo and Brian Younger conducted a traffic stop of Appellee's car due to a broken tail light. While effectuating the traffic stop, the officers noticed Appellee reaching toward the center console of the automobile. Once the officers reached the vehicle, Officer Younger asked for and obtained Appellee's license and vehicle registration. After obtaining the documents, the officers asked Appellee and his passenger to exit the vehicle, whereupon Officer Younger conducted a protective sweep of the car for the safety of the officers. It was during this search that Officer Younger opened the center console and saw three pill bottles. Two pill bottles had the labels partially removed, while the label on the third bottle was intact and bore Appellee's name. Officer Younger seized the pill bottles and arrested Appellee. The pill bottles were later determined to contain prescription pain medication. Appellee was charged with possession of a controlled substance with intent to deliver and possession of a controlled substance.

Appellee filed a motion to suppress that was granted following a hearing on January 8, 2013. On February 7, 2013, the Commonwealth filed a timely notice of appeal.

■ Before we may consider the issue the Commonwealth raised on appeal, we must first address a procedural and jurisdictional concern. As noted above, the suppression court granted Appellee's motion to suppress on January 8, 2013, and the Commonwealth filed a timely appeal on February 7, 2013. Despite this timely appeal, the suppression court asserts the appeal should be quashed. Suppression Court Opinion, 7/19/13, at 2. The suppression court addressed its concern as follows:

On February 8, 2013, at a 30 day status listing, the Commonwealth requested that a voluntary nolle prosequi *with prejudice* of all charges against the [Appellee] be entered. [Appellee's] counsel was present at this listing and did not oppose the entry of such a request, which was granted by this Court. Later that same day, this Court was served with the Commonwealth's Notice of Appeal through the U.S. Postal Service.

"A nolle prosequi *is a voluntary withdrawal* by the prosecuting attorney of proceedings on a particular bill or information ..." *Commonwealth v. Whiting,* 509 Pa. 20, 500 A.2d 806, 807 (Pa.1985). When a request for a nolle prosequi is made, the Court must consider two factors: "(1) is the reason given by the Commonwealth for requesting the nolle prosequi valid and reasonable, and (2) does the [Appellee], at the time the nolle prosequi is requested, have a valid speedy trial claim?" *Commonwealth v. Reinhart,* 466 Pa. 591, 353 A.2d 848, 853 (Pa.1976); see also *Commonwealth v. Rega,* 856 A.2d 1242, 1245 (Pa.Super.2004). In this case, since the nolle prosequi was made *with prejudice* and there was no opposition from the [Appellee's] counsel, this Court did not hold a hearing on these two considerations.

Granted, this Court is mindful of the automatic stay provisions imposed upon it under Pa.R.A.P. 1701, however, the stay is limited only to matters in dispute on appeal per Pa.R.A.P. 1701(c), which states "Where only a particular item,

claim or assessment adjudged in the matter is involved in an appeal, ... the appeal or petition for review proceeding shall operate to prevent the trial court ... from proceeding further with only such item ..." *Commonwealth v. Moyer*, 421 Pa.Super. 102, 106–07, 617 A.2d 744, 747 (1992).

Since the nolle prosequi was not a matter in dispute on appeal, this Court did retain jurisdiction to accept the Commonwealth's request to terminate the proceedings against the [Appellee]. As of the filing of this Opinion, the Commonwealth has not sought to vacate the nolle prosequi in light of the appeal taken by it a day earlier.

Given the Commonwealth's subsequent voluntary dismissal of the charges with prejudice and the lack of effort to vacate the nolle prosequi, this Court respectfully requests that the Commonwealth's appeal be quashed.

Suppression Court Opinion, 7/19/13, at 1–2 (emphasis in original).[2]

While we can appreciate the suppression court's rationale for its request to quash the appeal, we decline to do so. The suppression court correctly cites to Pa.R.A.P. 1701 in its discussion concerning trial court authority following the filing of an appeal. Pa.R.A.P. 1701 provides as follows:

**Effect of Appeal Generally**

**(a) General rule.** Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may no longer proceed further in the matter.

**(b) Authority of a trial court or agency after appeal.** After an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may:

(1) Take such action as may be necessary to preserve the status quo, correct formal errors in papers relating to the matter, cause the record to be transcribed, approved, filed and transmitted, grant leave to appeal in forma pauperis, grant supersedeas, and take other action permitted or required by these rules or otherwise ancillary to the appeal or petition for review proceeding.

(2) Enforce any order entered in the matter, unless the effect of the order has been superseded as prescribed in this chapter.

(3) Grant reconsideration of the order which is the subject of the appeal or petition, if:

(i) an application for reconsideration of the order is filed in the trial court or other government unit within the time provided or prescribed by law; and

(ii) an order expressly granting reconsideration of such prior order is filed in the trial court or other government unit within the time prescribed by these rules for the filing of a notice of appeal or petition for review of a quasijudicial order with respect to such order, or within any shorter time provided or prescribed by law for the granting of reconsideration.

A timely order granting reconsideration under this paragraph shall render inoperative any such notice of appeal or petition for review of a quasijudicial order theretofore or thereafter filed

---

**2.** The record reflects that the Commonwealth's motion for the entry of a *nolle prosequi* was granted in an order filed on February 8, 2013. Order, 2/8/13. The *nolle prosequi* was filed due to the mistaken belief that the

Commonwealth had failed to file a timely appeal from the suppression order. *Id.* Thus, the *nolle prosequi* was filed in error because a timely appeal had in fact been filed on February 7, 2013.

or docketed with respect to the prior order. The petitioning party shall and any party may file a praecipe with the prothonotary of any court in which such an inoperative notice or petition is filed or docketed and the prothonotary shall note on the docket that such notice or petition has been stricken under this rule. Where a timely order of reconsideration is entered under this paragraph, the time for filing a notice of appeal or petition for review begins to run anew after the entry of the decision on reconsideration, whether or not that decision amounts to a reaffirmation of the prior determination of the trial court or other government unit. No additional fees shall be required for the filing of the new notice of appeal or petition for review.

(4) Authorize the taking of depositions or the preservation of testimony where required in the interest of justice.

(5) Take any action directed or authorized on application by the appellate court.

(6) Proceed further in any matter in which a nonappealable interlocutory order has been entered, notwithstanding the filing of a notice of appeal or a petition for review of the order.

**(c) Limited to matters in dispute.** Where only a particular item, claim or assessment adjudged in the matter is involved in an appeal, or in a petition for review proceeding relating to a quasijudicial order, the appeal or petition for review proceeding shall operate to prevent the trial court or other government unit from proceeding further with only such item, claim or assessment, unless otherwise ordered by the trial court or other government unit or by the appellate court or a judge thereof as necessary to preserve the rights of the appellant.

**(d) Certain petitions for review.** The filing of a petition for review (except a petition relating to a quasijudicial order) shall not affect the power or authority of the government unit to proceed further in the matter but the government unit shall be subject to any orders entered by the appellate court or a judge thereof pursuant to this chapter.

Pa.R.A.P. 1701.

In *Commonwealth v. Hairston*, 323 Pa.Super. 449, 470 A.2d 1004 (1984), a panel of this Court explained the ramifications of filing an appeal on the trial court's jurisdiction. In *Hairston*, the appellant pled guilty to murder, robbery, and burglary. The trial court accepted the guilty plea, conducted a degree of guilt hearing, and found appellant guilty of murder in the second degree. On April 19, 1977, the trial court sentenced the appellant to a term of life imprisonment on the murder charge and to terms of ten to twenty years each on the robbery and burglary charges to run consecutively to the life sentence. Over four and one-half years later, on December 15, 1981, the appellant filed a petition for collateral relief under the Post Conviction Hearing Act ("PCHA"), the precursor to the Post Conviction Relief Act ("PCRA"). After review, the post-conviction court denied the appellant's petition for relief on June 16, 1982, without a hearing. The appellant filed a timely notice of appeal on June 22, 1982. Despite the filing of appellant's appeal, on July 1, 1982, the post-conviction court issued a second order reaffirming its June 16th order dismissing the appellant's petition without a hearing, and it also vacated appellant's sentence for robbery because it should have merged with the murder conviction. On appeal, this Court emphasized that because the appellant's notice of appeal had already been filed at the time of the second order, the second order was a nullity. *Hairston*, 470 A.2d at 1006 (citing

Pa.R.A.P. 1701). After review, this Court vacated the post-conviction court's orders and remanded the matter for an evidentiary hearing on the appellant's post-conviction petition and for the sentence for robbery to be vacated as it merged with the murder conviction. *Id.*[3]

Here, the suppression court, as support for its position that the instant case is distinguishable from the general rule set forth in Pa.R.A.P. 1701, cites to Pa.R.A.P. 1701(c) and *Commonwealth v. Moyer,* 421 Pa.Super. 102, 617 A.2d 744 (1992). The suppression court asserts that, where only one claim is appealed, the trial court is prevented from addressing only that particular claim. Suppression Court Opinion, 7/19/13, at 2. We disagree with the suppression court's conclusion.

In *Moyer,* the trial court imposed a mandatory life sentence for first-degree murder pursuant to Pennsylvania's Special Rules For Cases In Which Death Sentence Is Authorized pursuant to former Pa. R.Crim.P. 351–360.[4] The life sentence was imposed after the jury failed to reach a unanimous decision on whether to sentence the appellant to death or life imprisonment. The appellant filed post-verdict motions that were denied, and his judgment of sentence became final for purposes of appeal. The appellant appealed his life sentence, and this court affirmed his judgment of sentence. The appellant then filed a petition for allowance of appeal in the Supreme Court. While the appeal on the life sentence was pending before the Supreme Court, the trial court sentenced the appellant for the crimes of robbery and burglary for which he was also found guilty at the murder trial. Thereafter, the appellant filed an appeal from the judgment of sentence for robbery and burglary. The appellant argued on appeal that the trial court did not have jurisdiction to sentence him on the robbery and burglary convictions because his appeal of the murder conviction and life sentence operated as a stay upon the trial court precluding any further proceedings pursuant to Pa. R.A.P. 1701. On appeal, this Court concluded that the trial court did have the authority to sentence the appellant for robbery and burglary despite the pending appeal. We concluded that, because of the gravity of the potential sentences authorized or mandated for first-degree murder, the legislature devised special rules of procedure to protect the appellant. *Moyer,* at 746–747. If these rules regarding death penalty cases became the basis for finding inadvertent waiver, the purpose of the legislation would be thwarted. *Id.* at 746. We held that the appellant's right to an immediate appeal for a murder conviction should not bar the trial court from imposing sentences for the remaining counts. *Id.*

Here, the Commonwealth filed its *nolle prosequi* **after** the appeal was filed. Additionally, while the suppression court considered the *nolle prosequi* to be an item not in dispute for purposes of appeal pursuant to Pa.R.A.P. 1701(c), we cannot agree. It is apparent from the above discussion that it was the special rules concerning death penalty cases in *Moyer* that bifurcated the appeals. It was this bifurcation that distinguished the procedure followed in *Moyer* from the general rule employed in *Hairston* regarding Pa.R.A.P. 1701. The bifurcated procedure followed

---

**3.** *See also Commonwealth v. Pearson,* 454 Pa.Super. 313, 685 A.2d 551, 556–557 (1996) (*stating that pursuant to Pa.R.A.P. 1701(a),* once a notice of appeal is filed, the trial court is divested of jurisdiction to act further in the matter).

**4.** The Special Rules For Cases In Which Death Sentence Is Authorized, Pa.R.Crim.P. 351–360, were renumbered and amended on March 1, 2000, and are now found at Pa. R.Crim.P. 800–811, effective April 1, 2001.

in *Moyer* provided the trial court the authority to retain jurisdiction and sentence the appellant on the remaining counts.

In the case at bar, there is no bifurcation or procedural hybrid and, therefore, *Moyer* is inapplicable. Here, the Commonwealth certified in its notice of appeal that the order granting the suppression motion terminates or substantially handicaps the prosecution of the case. Notice of Appeal, 2/7/13. Thus, the entire case was at issue, and Pa.R.A.P. 1701(c) is inapplicable. Moreover, the untimely filing of the *nolle prosequi* and the subsequent order were nullities as the suppression court was without authority to proceed any further due to the pending appeal. *Hairston,* 470 A.2d at 1006; *Pearson,* 685 A.2d at 557; Pa.R.A.P. 1701(a). Therefore, we decline to quash the Commonwealth's appeal, and we will address the Commonwealth's challenge to the order granting Appellee's motion to suppress.

In its appeal, the Commonwealth argues that the suppression court erred in suppressing the contents of the two prescription pill bottles that had their labels partially removed. The Commonwealth claims that the pill bottles were observed in plain view during a lawful traffic stop and protective search. Commonwealth's Brief at 23. The Commonwealth claims that under the totality of the circumstances, there was probable cause to arrest Appellant, and the order should be reversed. *Id.* Because we conclude that there was no probable cause, we disagree with the Commonwealth's argument and affirm the order of the suppression court.

■■■ When the Commonwealth appeals from a suppression order, this Court may consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the record as a whole, remains uncontradicted. *Commonwealth v. Whitlock,* 69 A.3d 635, 637 (Pa.Super.2013) (citation omitted). In our review, we are not bound by the suppression court's conclusions of law, and we must determine if the suppression court properly applied the law to the facts. *Id.* We defer to the suppression court's findings of fact because, as the finder of fact, it is the suppression court's prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony. *Id.* (citing *Commonwealth v. Baker,* 946 A.2d 691, 693 (Pa.Super.2008)).

■■■ The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals against unreasonable searches and seizures. *Commonwealth v. Miller,* 56 A.3d 424, 429 (Pa.Super.2012). Warrantless searches or seizures are presumptively unreasonable subject to certain established exceptions. *Id.* (citation omitted). One exception, the plain view doctrine, permits the warrantless seizure of an object when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent to him that the object is incriminating; and (3) the officer has a lawful right of access to the object. *Id.* (citation omitted).

As noted above, the search at issue in the instant case transpired in an automobile. Until recently, in order for police officers to conduct a lawful search of an automobile without a warrant, the officers were required to have probable cause and exigent circumstances. However, recently, our Supreme Court, in an Opinion Announcing the Judgment of the Court, removed the dual requirement of probable cause and exigency for a warrantless search of an automobile in Pennsylvania. In *Commonwealth v. Gary,* —— Pa. ——, 91 A.3d 102 (Pa.2014), our Supreme Court held as follows:

In sum, our review reveals no compelling reason to interpret Article I, Sec-

tion 8 of the Pennsylvania Constitution as providing greater protection with regard to warrantless searches of motor vehicles than does the Fourth Amendment. Therefore, we hold that, in this Commonwealth, the law governing warrantless searches of motor vehicles is coextensive with federal law under the Fourth Amendment. **The prerequisite for a warrantless search of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is required.** The consistent and firm requirement for probable cause is a strong and sufficient safeguard against illegal searches of motor vehicles, whose inherent mobility and the endless factual circumstances that such mobility engenders constitute a per se exigency allowing police officers to make the determination of probable cause in the first instance in the field.

*Gary*, 91 A.3d at 138 (emphasis added). Thus, the salient question for the suppression court was whether the police officers had probable cause to conduct the warrantless search.[5]

██ Here, the suppression court, after finding that the stop of the vehicle and the officers' protective sweep of the car were lawful, concluded that it was impossible for the officers in this case to determine that these prescription bottles contained illegal substances because the contents of the bottles were not immediately apparent. Suppression Court Opinion, 7/19/13, at 1, 12.

Officer Younger was not able to testify that it was "immediately apparent" to him that these pill bottles contained illegal drugs. He admitted that he did not know what these bottles contained. He had to call Poison Control to conduct

testing in order to determine that these were illegal narcotics. If such items were immediately apparent to him to be contraband, there would have been no need to have Poison Control conduct such tests.

*Id.*, at 12.

We agree with the suppression court's conclusion that while the pill bottles themselves were in plain view, the contents of those bottles were not immediately apparent, and a pill bottle by itself is not contraband. Suppression Court Opinion, 7/19/13, at 1. The potentially incriminating contents of the pill bottles were not discovered until after they were improperly seized, searched, and tested, thereby proving that the "immediately apparent" requirement for the plain view exception had not been satisfied. *Id.*

The suppression court continued:

These officers should have secured the vehicle and obtained a proper warrant in order to open the pill bottles and conduct testing on the contents therein. The reasonableness for a warrantless search ceased when Officer Younger observed the bottles in the compartment but could not immediately recognized [sic] the contents. His intent in conducting this search was for weapons for officer safety. Once no weapon was observed, any warrantless basis for his search ended due to his acknowledged inability to make a determination that the pill bottles contained contraband just by plain observation.

Suppression Court Opinion, 7/19/13, at 14.

We agree with the suppression court. The two pill bottles that had their labels partially removed were next to a pill bottle

---

**5.** We note that in its opinion, the suppression court mentions exigency, as that was the applicable standard at the time of the suppression court's decision. As explained in *Gary* and as will be discussed below, we need only review whether the police possessed probable cause to search the pill bottles.

with an intact label bearing Appellee's name, and the pill bottles alone were not "immediately apparent" as contraband. The fact that Appellee had pill bottles in his car, with one bearing his name, without more, did not place the contents of the bottles in plain view and did not establish probable cause.[6]

Pursuant to *Gary*, absent probable cause, the warrantless search of the pill bottles in Appellant's vehicle was unlawful, and based on our standard of review, we discern no reason to overturn the suppression court's ruling. *See Commonwealth v. Kelly*, 487 Pa. 174, 409 A.2d 21 (1979) (plain view observation of a prescription pill bottle containing foil packets did not give rise to probable cause to search defendant's vehicle as nature of the pill bottle was not "immediately apparent" and police had no other indication of drug related activity).

Order affirmed.

---

6. Our Supreme Court, in discussing plain view observations of containers that may hold contraband, has stated as follows:

It is not the mere possession of such containers, but rather the totality of the circumstances which dictated the Superior Court's conclusion here. This is true, as well, with respect to the federal cases criticized by [a]ppellant. *See, e.g., Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); *United States v. Robles*, 37 F.3d 1260 (7th Cir.1994); *United States v. Prandy–Binett*, 995 F.2d 1069 (D.C.Cir. 1993), *cert. denied* 510 U.S. 1167, 114 S.Ct. 1196, 127 L.Ed.2d 545 (1994); *United States v. Moreno*, 897 F.2d 26 (2d Cir.1990), *cert. denied* 497 U.S. 1009, 110 S.Ct. 3250, 111 L.Ed.2d 760 (1990); *United States v. Cardona–Rivera*, 904 F.2d 1149 (7th Cir. 1990); *United States v. Barrios–Moriera*, 872 F.2d 12 (2d Cir.1989), *cert. denied* 493 U.S. 953, 110 S.Ct. 364, 107 L.Ed.2d 350 (1989). **In none of the above-cited cases did the courts find that the mere observation of a container or package, the likes of which an officer has known, in the past, to contain narcotics, was sufficient to establish probable cause.** Instead, it was the holdings of those courts that when viewed together with the additional incriminating facts, an officer's observation and evaluation of suspect containers and/or packages are appropriate factors to consider in ascertaining whether the warrantless arrest was supported by probable cause.

*Commonwealth v. Evans*, 546 Pa. 417, 685 A.2d 535, 538 (1996) (emphasis added).