J. A04042/12

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
         Appellant :
:
    v. :
:
ERIC DUNN, :
:
         Appellee : No. 1568 EDA 2011

Appeal from the Order Entered May 6, 2011
In the Court of Common Pleas of Delaware County
Criminal No(s).: CP-23-CR-0004639-2009

BEFORE: BENDER, OTT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.: **FILED SEPTEMBER 29, 2014**

This Commonwealth appeal returns to this panel after our Supreme Court vacated our decision in this suppression/vehicle stop case,[1] affirming of the order of the Delaware County Court of Common Pleas, granting in part and denying in part the suppression motion of Appellee, Eric Dunn. This panel applied the then-existing "limited automobile exception," which required both probable cause and exigent circumstances for a warrantless search of a vehicle. Our Supreme Court reversed and remanded to this Court in light of **Commonwealth v. Gary**, 91 A.3d 102 (Pa. 2014), which

---

[*] Former Justice specially assigned to the Superior Court.

[1] **Commonwealth v. Dunn**, 777 MAL 2012 (order) (Pa. filed Jul. 1, 2014) (vacating **Commonwealth v. Dunn**, 1568 EDA 2011 (unpublished memorandum) (Pa. Super. filed Sept. 5, 2012) ("Prior Memorandum")).

abandoned the limited automobile exception. We now hold that the search of the vehicle was legal under **Gary**, and furthermore that the search of a closed safe in plain view was legal.[2] Accordingly, we reverse the suppression of evidence found in Appellee's vehicle.[3]

The underlying order suppressed evidence obtained from the passenger compartment of Appellee's vehicle,[4] including the contents of a closed but unlocked safe, but allowed evidence obtained from Appellee's person. We summarize the trial court's findings of fact as follows. **See** Adjudication at 1-7.[5]

On the evening of September 27, 2007, Collingdale Borough Police Officer Robert Marvil was wearing plain clothes and operating an unmarked police vehicle. In his rear view mirror, he observed a car "racing up from behind." **Id.** at 1. The car swerved and passed the officer on his right, almost striking his vehicle. Officer Marvil followed the car, a silver Mercury

---

[2] As we discuss **infra**, the safe had a latch on it, but the latch was not locked.

[3] The Commonwealth does not challenge the portion of the order denying Appellee's motion to suppress evidence found on his person, and we do not disturb that portion.

[4] Appellee was the driver of the vehicle and the vehicle was registered to him. Adjudication, 5/6/11, at 17. The trial court held that Appellee established a privacy interest in the car and thus standing to challenge the search of it. **Id.** at 16-17.

[5] The court's findings of fact, legal discussion, and suppression order were all included in one filing entitled "Adjudication."

sedan, but having no emergency lights or warning devices, he was unable to signal the car to stop. The officer saw the car proceeding "erratically, passing both to the left and right of other traffic almost striking another vehicle." *Id.* at 2. Officer Marvil reported this incident *via* radio and provided the vehicle's license number.

The car stopped, and a female "exited the right rear and shut the car door." *Id.* Officer Marvil exited his vehicle, approached the Mercury, announced his presence, displayed his badge, and "sought to have the driver shut-off the ignition." *Id.* As he came within five or ten feet of the car, "the car drove off at a high rate of speed." *Id.*

Officer Marvil again followed the vehicle, and Darby Borough Police Officer Brian Evans, who had heard the radio reports, took pursuit in his marked police vehicle, with his lights and siren activated. "Other Darby Borough police cars also participated in the pursuit." *Id.* at 3. The car stopped "in an area recognized by the local police as a high crime/drug trafficking area." *Id.* The lights on Officer Evans' police car "trained upon the subject vehicle to render it clearly illuminated and assure the police could see what was occurring within and around the car." *Id.* Other officer "provided back-up and also advanced upon the Mercury." *Id.*

Officer Evans approached the car and saw the driver, who was Appellee, "frantically reaching down with both hands towards the seat as if he were trying to conceal something." *Id.* Officer Evans stood at the

driver's door, Appellee opened the window, and a "strong odor of fresh marijuana wafted from the" car. *Id.* Appellee "was visibly nervous and shaking," and there was a metal Honeywell safe on the car seat under Appellee's right arm. *Id.* at 4. The safe was "slightly larger than a shoe box."

The officers removed Appellee, as well as a juvenile front passenger and a driver-side rear passenger from the car, and took them to the rear of the vehicle, where none of the occupants "could access the contents of the car." *Id.* at 4. Because the area was a high crime and drug area, and because of the police's observations, the police conducted a pat-down search of Appellee and the occupants. They recovered approximately $885 and a cell phone from Appellee's person.

Meanwhile, the driver's door was open and Officer Evans saw the safe. The officer "entered the car and saw the safe's key-latch was unlocked and the top of its lid powdered with a white residue, which he believed was . . . cocaine." *Id.* at 5. "The contents of the safe were not visible." *Id.* "[A]fter the officer entered the passenger compartment to inspect the safe . . . it became clear that the odor of fresh marijuana was emanating from the safe." *Id.* Officer Evans retrieved and opened the safe at the scene. It contained:

> one clear plastic bag containing 39 small red glassine bags containing a white powdery substance; one clear plastic bag containing 22 small red baggies containing a white powdery substance; one red "White Owl" plastic cigar tube

containing 16 glassine bags containing a white powdery substance; one clear plastic bag containing three tin foil balls each containing a white powdery substance; one clear plastic bag containing four glassine bags containing a green vegetable-like matter; four clear plastic bags containing a loose vegetable-like matter; several new baggies commonly used to package crack cocaine or marijuana; [$50]; and[ ] a small composition notebook.

*Id.*[6] Subsequent testing confirmed that the white powder and vegetable-like matter were cocaine and marijuana. "As a result of the discovery of the contents of the safe, [Appellee] was taken into custody." *Id.* at 6.

The trial court found that Officer Marvil possessed reasonable suspicion to conduct a vehicle stop for suspected reckless driving, careless driving, driving at an unsafe speed, and improper passing to the right. *Id.* at 19-20. The court also found that the officers lawfully conducted a pat-down search of Appellee. Thus, it denied Appellee's motion to suppress the evidence recovered from his person. *Id.* at 22.

However, the court found that by removing the occupants of the car to the rear of the vehicle, the police officers "barred the prospect of [them] regaining access to the automobile's interior [and] thus precluded the need . . . to enter the vehicle for self-protection[.]" *Id.* at 11. The court further reasoned that the "information [then] available to the Officer did not establish probable cause to arrest [Appellee] for drug charges." *Id.* at 23.

---

[6] In addition, Officer Evans testified that "11 blunt cigars" were contained in the safe. N.T. Suppression H'rg, 5/27/10, at 37.

The court found that although the initial "situation . . . literally (and figuratively) reeked of the prospect of the possession of marijuana and perhaps other controlled substances," "the significant, substantial information to suggest the continuing and actual presence of contraband was generated only after Officer Evans entered the car and retrieved the safe." *Id.* at 11. Accordingly, the court found, "Neither Officer Evans' entry of the vehicle nor his removal of the safe . . . was conducted incident to an arrest or as a result of plain view of contraband." *Id.* at 24. The court thus held the seizure of the safe was improper, and granted Appellee's motion to suppress evidence obtained from the passenger compartment and from the safe. *Id.*

Appellee was arrested and charged with possession of a controlled substance, possession with intent to deliver a controlled substance, possession of drug paraphernalia, and eight violations of the Motor Vehicle Code, including, careless driving and reckless driving. He filed a motion to suppress, and the court held a hearing on May 27, 2010. After the suppression judge passed away, the matter was reassigned to another judge. The court issued its "Adjudication" on May 6, 2011, allowing the evidence recovered from Appellee's person but suppressing the evidence recovered from his vehicle. *Id.* at 24.

The Commonwealth took this timely appeal.[7] On September 5, 2012, this panel affirmed the suppression order. As stated above, we applied the then-current "limited automobile exception," which provided: "warrantless vehicle searches must be accompanied not only by probable cause, but also by exigent circumstances beyond mere mobility[.]" Prior Memorandum at 10 (citing **Commonwealth v. Liddie**, 21 A.3d 229, 233 (Pa. Super. 2011) (*en banc*)). In a footnote, we noted that the Pennsylvania rule was "distinct from its federal corollary which permits the warrantless seizure of contraband from a vehicle without first establishing certain additional exigent circumstances." Prior Memorandum at 10 n.8 (quoting **Liddie**, 21 A.3d at 234 n.7). We further noted that in May of 2012, the Pennsylvania Supreme Court granted allowance of appeal in **Commonwealth v. Gary**, 44 A.3d 1146 (Pa. 2012), on the question, "Should this Court adopt the federal automobile exception to the warrant requirement?" Prior Memorandum at 10-11 n.8.

The Supreme Court issued a decision in **Gary** on April 29, 2014, the holding of which we will discuss **infra**. On July 1, 2014, the Court vacated our decision and remanded this case in light of **Gary**. This panel did not request new briefs from the parties.

The Commonwealth presents the following questions for our review:

---

[7] Our review of the record indicates there was no Pa.R.A.P. 1925(b) order and no 1925(b) statement filed by the Commonwealth.

1.  Did the trial court err as a matter of law by suppressing evidence of illegal drugs seized from an unlocked safe which smelled of marijuana, had cocaine residue on its lid and was located in plain view on the front seat of a vehicle during the course of a lawful vehicle stop?

2.  Did the trial court err by concluding that the police lacked probable cause to search the vehicle where the strong odor of marijuana coming from the vehicle was immediately obvious to the officer?

3.  Did the trial court err by failing to apply the "limited automobile exception" to the instant case and by failing to conclude that the police could lawfully enter the vehicle to search for the marijuana?

4.  Did the trial court err by concluding that the police could not lawfully seize the drugs from within the unlocked safe where: (a) the police had lawful access to the safe under the "limited automobile exception," (b) the presence of marijuana in the safe was immediately apparent, and (c) the police observed the safe from a lawful vantage point?

Commonwealth's Brief at 1.

We address the Commonwealth's issues together, as all support a common conclusion that the "court erred by ruling that the police lacked the legal authority to enter [Appellee's] vehicle" and seize evidence. *Id.* at 12. First, the Commonwealth argues the court erred in finding the police lacked probable cause to search the car, and maintains that the odor of marijuana emanating from Appellee's car provided probable cause for the police "to believe that a crime was being committed and that contraband was in [Appellee's] car." *Id.* at 17-18. The Commonwealth then alleges the court erred in applying the limited automobile exception because the officers did

not have advance knowledge that Appellee's vehicle contained contraband and that "the police lawfully came into contact with [the safe] an observe[d it] from a lawful vantage point."[8] *Id.* at 26, 27. The Commonwealth also contends that "the illegality of the safe's contents were immediately apparent to the police based upon the white powder on its lid and the odor of marijuana coming from within the unlocked safe." *Id.* at 27. Pursuant to *Gary*, we hold the search of the interior of the vehicle and seizure of its contents was legal.

We note the relevant standard of review:

> When the Commonwealth appeals from a suppression order, this Court may consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the record as a whole, remains uncontradicted. In our review, we are not bound by the suppression court's conclusions of law, and we must determine if the suppression court properly applied the law to the facts. We defer to the suppression court's findings of fact because, as the finder of fact, it is the suppression court's prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony.

*Commonwealth v. Hudson*, 92 A.3d 1235, 1241 (citations omitted).

In *Gary*, the Pennsylvania Supreme Court announced:

> [W]e now hold that with respect to a warrantless search of a motor vehicle that is supported by probable cause,

---

[8] A careful review of the Commonwealth's brief reveals that although it claims the **limited automobile exception** applied in this case, its arguments instead relate to the **plain view doctrine**. Nevertheless, we now consider this appeal under *Gary*, which abandoned the limited automobile exception.

> Article I, Section 8 of the Pennsylvania Constitution affords no greater protection than the Fourth Amendment to the United States Constitution. Accordingly, we adopt the federal automobile exception to the warrant requirement, which allows police officers to search a motor vehicle when there is probable cause to do so and does not require any exigency beyond the inherent mobility of a motor vehicle.

*Gary*, 91 A.3d at 104. It further stated:

> The prerequisite for a warrantless search of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a motor vehicle is required. The consistent and firm requirement for probable cause is a strong and sufficient safeguard against illegal searches of motor vehicles, whose inherent mobility and the endless factual circumstances that such mobility engenders constitute a *per se* exigency allowing police officers to make the determination of probable cause in the first instance in the field.

*Id.* at 138.

We also note:

> "Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent individual in believing that an offense was committed and that the defendant has committed it." In determining whether probable cause exists, we must consider the totality of the circumstances as they appeared to the arresting officer. Additionally, "[t]he evidence required to establish probable cause for a warrantless search must be more than a mere suspicion or a good faith belief on the part of the police officer."

*Commonwealth v. Copeland*, 955 A.2d 396, 400 (Pa. Super. 2008) (citations omitted).

With respect to "plain view observations of containers that may hold contraband," our Supreme Court has stated:

> It is not the mere possession of such containers, but rather the totality of the circumstances which dictated the Superior Court's conclusion [that the officer's belief that the package contained narcotics constituted a reasonable inference based on the facts known to him at the time of the arrest.] In none of the [federal cases cited by the defendant] did the courts find that the mere observation of a container or package, the likes of which an officer has known, in the past, to contain narcotics, was sufficient to establish probable cause. Instead, it was the holdings of those courts that when viewed together with the additional incriminating facts, an officer's observation and evaluation of suspect containers and/or packages are appropriate factors to consider in ascertaining whether the warrantless arrest was supported by probable cause.

*Hudson*, 92 A.3d at 1243 n.6 (quoting *Commonwealth v. Evans*, 685 A.2d 535, 538 (Pa. 1996)).

Pursuant to *Gary* and *Hudson*, we review whether the officers had probable cause to conduct, first, the warrantless search of the vehicle and second, the warrantless search of the safe. *See Gary* 91 A.3d at 104, 138; *Hudson*, 92 A.3d at 1241 (stating that under *Gary*, salient question for suppression court was whether police officers had probable cause to conduct warrantless search).

The suppression court found the officers had **reasonable suspicion** to stop Appellee for suspected violation of Vehicle Code offenses:

> Here, Officer Marvil observed and reported the Mercury's wildly reckless maneuvers which reasonably offered grounds to believe that the vehicle's driver had offended the Vehicle Code. *See generally* 75 Pa.C.S.A. § 3736 (Reckless driving), § 3714 (Careless driving), § 3361 (Driving at safe safe) & § 3304 (Improper passing to the right). *See also* 75 Pa.C.S.A. § 6308 (Investigation by Police Officer-Duty of Operator to Stop[).]

* * *

[ ] The circumstances presented to Officer Marvil after seeing the Mercury nearly strike his unmarked police car and thereafter proceed through other traffic in a hazardous fashion[ ] offered more than a "reasonable suspicion" justifying a traffic stop to issue a ticket to the vehicle operator.

Adjudication at 19, 20.

However, we hold that under **Commonwealth v. Chase**, 960 A.2d 108 (Pa. 2008), the proper quantum of cause was **probable cause**.[9] **See Chase**, 960 A.2d at 116 (requiring police to have probable cause to conduct "vehicle stop based solely on offenses not 'investigatable'" "because the purposes of a **Terry** stop do not exist—maintaining the *status quo* while investigating is inapplicable where there is nothing further to investigate")). Nevertheless, we would hold that Officer Marvil possessed the requisite probable cause based on his observations of the car's maneuvers, and thus the initial stop of Appellant's vehicle was proper.

We next consider whether the officers had probable cause to conduct a warrantless search of the vehicle. **See Gary**, 91 A.3d at 104, 138. Under the totality of the circumstances as found by the trial court, we hold Officer

_____

[9] **See also Commonwealth v. Landis**, 89 A.3d 694, 703 (Pa. Super. 2014) (holding that under **Chase**, showing of probable cause was necessary to justify vehicle stop for violation under driving roadways laned for traffic, 75 Pa.C.S. § 3309, where there was no express indication that trooper stopped defendant in order to conduct additional investigations into DUI or other impairments of his ability to drive safely).

Marvil had probable cause to believe that Appellee possessed an illegal substance in the vehicle. *See Copeland*, 955 A.2d at 400. As Officer Evans approached the vehicle on foot, he saw Appellee "frantically reaching down with both hands towards the seat as if he were trying to conceal something." Adjudication at 3. The officer also smelled a "strong odor of fresh marijuana" from the vehicle when Appellee opened his window. *Id.*

We must further consider, however, the distinct question of whether the police could search the contents of the closed safe. In the recent Superior Court opinion of *Hudson*, decided post-*Gary*, this Court affirmed the suppression of pill bottles found in the center console of a car. *Hudson*, 92 A.3d at 1242-43. In that case, police officers conducted a valid vehicle stop of the defendant. *Id.* at 1242.

> While effectuating the traffic stop, the officers noticed [the defendant] reaching toward the center console of the automobile. [After the officers reached the vehicle and obtained the defendant's license and vehicle registration,] the officers asked [the defendant] and his passenger to exit the vehicle, whereupon [one of the officers] conducted a protective sweep of the car for the safety of the officers. It was during this search that [the officer] opened the center console and saw three pill bottles. Two pill bottles had the labels partially removed, while the label on the third bottle was intact and bore [the defendant's] name. [The officer] seized the pill bottles and arrested [the defendant]. The pill bottles were later determined to contain prescription pain medication. [The defendant] was charged with possession of a controlled substance with intent to deliver and possession of a controlled substance.

*Id.* at 1236. Subsequently, the officer "was not able to testify that it was 'immediately apparent' to him that these pill bottles contained illegal drugs." *Id.* at 1242.

The trial court suppressed the pill bottles. *Id.* at 1236. It "concluded that it was impossible for the officers . . . to determine that these prescription bottles contained illegal substances because the contents of the bottles were not immediately apparent." *Id.* at 1242. The court noted that the officer "did not know what these bottles contained[ and] had to call Poison Control to conduct testing in order to determine that these were illegal narcotics." *Id.* The trial court further found:

> These officers should have secured the vehicle and obtained a proper warrant in order to open the pill bottles and conduct testing on the contents therein. The reasonableness for a warrantless search ceased when [the officer] observed the bottles in the compartment but could not immediately recognized [sic] the contents. **His intent in conducting this search was for weapons for officer safety.** Once no weapon was observed, any warrantless basis for his search ended due to his acknowledged inability to make a determination that the pill bottles contained contraband just by plain observation.

*Id.* (emphasis added).

On appeal, this Court agreed:

> **We agree with the suppression court's conclusion that while the pill bottles themselves were in plain view, the contents of those bottles were not immediately apparent, and a pill bottle by itself is not contraband.** The potentially incriminating contents of the pill bottles were not discovered until after they were improperly seized, searched, and tested, thereby proving

- 14 -

that the "immediately apparent" requirement for the plain view exception had not been satisfied.

\*　　\*　　\*

. . .   The two pill bottles that had their labels partially removed were next to a pill bottle with an intact label bearing [the defendant's] name, and the pill bottles alone were not "immediately apparent" as contraband.  The fact that [the defendant] had pill bottles in his car, with one bearing his name, without more, did not place the contents of the bottles in plain view and did not establish probable cause.[ ]

*Id.* at 1242-43.

We find the facts in the case *sub judice* are distinguishable from those in **Hudson**.  Here, as Officer Evans approached the vehicle, he saw Appellee "frantically reaching down with both hands toward the seat as if he were trying to conceal something."  Adjudication at 3.  While a similar fact was present in **Hudson**,[10] in this case we have the additional factor of Officer Evans' smelling a "strong odor of fresh marijuana waft[ing] from the" vehicle when Appellee opened his window.  *Id.*  Furthermore, the safe was in plain view on the seat, "situated under [Appellee's] right arm."  *Id.* at 4.  After Appellee and his passengers were removed from the vehicle, the officers conducted a valid—under **Gary**—warrantless search of the car.  Officer Evans observed a white residue on the top of the safe, which he believed was cocaine.  *Id.* at 5.  Although the contents of the safe were not visible, it

---

[10] **See Hudson**, 92 A.3d at 1236 (stating as officers approached vehicle, they noticed defendant reaching toward center console).

was "clear" to the officer "that the odor of fresh marijuana was emanating from the safe." *Id.* The trial court specifically found, "The smell and its source triggered Office Evans' curiosity," and the officer opened the safe. *Id.* We hold that the totality of the circumstances lended the officer probable cause to search the safe for narcotics. *See Hudson*, 92 A.3d at 1243 n.6. Accordingly, after applying the dictates of *Gary* and *Hudson*, we hold the trial court erred in suppressing evidence retrieved from Appellee's vehicle. We thus reverse the portion of the order granting Appellee's motion to suppress this evidence.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/2014