J-A14046-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| AL LIK LANIER | : | |
| | : | |
| Appellee | : | No. 3709 EDA 2016 |

Appeal from the Order November 3, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009868-2015

BEFORE: GANTMAN, P.J., SHOGAN, J., and PLATT*, J.

MEMORANDUM BY GANTMAN, P.J.: **FILED JULY 24, 2018**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Philadelphia County Court of Common Pleas, which granted the suppression motion of Appellee, Al Lik Lanier. We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them.

The Commonwealth raises the following issue for our review:

> DID THE SUPPRESSION COURT ERRONEOUSLY CONCLUDE THAT THE POLICE LACKED REASONABLE SUSPICION TO STOP [APPELLEE], WHERE THEY SAW HIM SITTING ON THE STEPS OF A SEEMINGLY UNOCCUPIED PROPERTY WITH THE FRONT DOOR PARTLY OPEN AND A LIGHT ON INSIDE, AT NIGHT IN A HIGH CRIME AREA WHERE A SHOOTING HAD OCCURRED WITHIN THE PAST WEEK; [APPELLEE] OFFERED CHANGING AND UNBELIEVABLE ANSWERS WHEN ASKED IF HE LIVED THERE; AND [APPELLEE] REPEATEDLY GLANCED

_____

* Retired Senior Judge assigned to the Superior Court.

NERVOUSLY AT A HOODIE BEHIND HIM THAT HE DENIED OWNING?

(Commonwealth's Brief at 7).

Our scope and standard of review when the Commonwealth appeals from a suppression order are as follows:

> [T]his Court may consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the record as a whole, remains uncontradicted. In our review, we are not bound by the suppression court's conclusions of law, and we must determine if the suppression court properly applied the law to the facts. We defer to the suppression court's findings of fact because, as the finder of fact, it is the suppression court's prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony.

***Commonwealth v. Hudson***, 92 A.3d 1235, 1241 (Pa.Super. 2014), *appeal denied*, 630 Pa. 734, 106 A.3d 724 (2014) (internal citations omitted).

After a thorough review of the record, Appellant's brief, the applicable law, and the well-reasoned opinion of the Honorable Roxanne E. Covington, we conclude the Commonwealth's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (**See** Trial Court Opinion, filed April 24, 2017, at 4-7) (finding: initial interaction when Officer Diaz approached Appellee on front stairs of porch was mere encounter; Officer Diaz saw hoodie behind Appellee and began to question him about his identification and home address; Officer Diaz ordered Appellee to step down from front stairs based on Officer Diaz's belief that Appellee responded untruthfully; Appellee tried to walk away, but Officer

- 2 -

Diaz said "stand over here, give me a second"; at this point, Appellee was not free to leave and interaction had escalated beyond mere encounter into investigative detention that required officer to possess reasonable suspicion of criminal activity; there was no indication that criminal activity was afoot or that Appellee was armed and dangerous; Appellee was sitting on steps doing nothing; Officer Diaz failed to articulate any reasonable basis for suspecting firearm under hoodie; Officer Diaz stated that shooting had occurred in vicinity in prior week, he had seen street camera footage of this particular neighborhood where people grabbed guns out of parked cars, and Appellee nervously glanced at hoodie; totality of circumstances did not justify investigatory detention under these facts; unlawful seizure occurred when Officer Diaz told Appellee to "stand over here, give me a second"; court did not address Officer Sisca's observations of bulge in Appellee's pocket because it occurred after unlawful stop; court notes it found incredible Officer Sisca's testimony that Appellee had said, "I have illegal pills in my pocket and they're my father's"; court properly granted Appellee's suppression motion). We agree. Accordingly, we affirm on the basis of the trial court opinion.

Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/24/18

FILED

APR **2 4** 2017

Office of Judicial Records
Appeals/Post Trial

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA-PHILADELPHIA
TRIAL DIVISION – CRIMINAL SECTION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-0009868-2015 |
| | : | |
| v. | : | 3709 EDA 2016 |
| | : | |
| AL LIK LANIER | : | |

**O P I N I O N**

COVINGTON, J.



CP-51-CR-0009868-2015 Comm. v. Lanier, Al Lik
Opinion

7936854331

Al Lik Lanier, hereinafter Appellee, was arrested and charged with several firearms violations and a drug charge on September 16, 2015.[1] On November 3, 2016, following a hearing, the Court granted Appellee's Motion to Suppress all physical evidence. The Commonwealth filed a timely interlocutory appeal on December 13, 2016. The charges stem from an arrest by bike patrol police officers, on routine patrol, in the area of 1633 West Susquehanna Street, Philadelphia, PA, following a shooting that occurred a few days to a week prior to this arrest.

Instantly, the Commonwealth claims the following point of error:

I.     ...whether the lower court erred in suppressing defendant's statements, drugs, and gun on the ground that the officers lacked reasonable suspicion to stop him.

Commonwealth's Pa.R.A.P. 1925(b) Statement.

As will be discussed below, this claim is without merit. Accordingly, no relief is due.

---

[1] 18 Pa.C.S.A §§ 6105(a)(1), 6106(a)(1), & 6108, respectively, and 35 Pa.C.S.A. §§ 780-113 (A16).

## I.  The Evidence

On September 15, 2015 at approximately 8:00 p.m., Police Officers Miguel Diaz and Joseph Sisca were on routine bike patrol as part of a community based patrol initiative. Notes of Testimony ("N.T."), 11/03/2016, at 10. They were there is response to a shooting that occurred a few days to a week prior. *Id.* at 13-4. During their 8 hour shift, Officer Diaz saw Appellee sitting on the steps at 1633 West Susquehanna across the street from a Chinese food store. *Id.* at 9, 11. Officer Diaz was familiar with Appellee from the neighborhood as he had observed him in front of the Chinese store on a handful of occasions. *Id.* at 11. The house in question is next to a "mini police station" which is used as a place for police officers to rest, do paperwork, and use the facilities if necessary. *Id.* at 20-1. On that day Officer Diaz noticed that the door to 1633 West Susquehanna was cracked open and a light was coming through the door. *Id.* at 19. He did not however mention anything about the lights being on in his Investigation Interview Record that he gave to Detective Keppel. *Id.* at 44-5. He went over to investigate because he believed the house to be vacant and has never seen anyone at the property. *Id.* at 19-20. Officer Diaz testified that he and only he, walked over to the house and then recognized the Appellee. *Id.* at 22. He then approached Appellee and started talking to him. *Id.* at 23. Behind the Appellee, about two feet away, bunched up on the top of the steps, was a dark colored hoodie. *Id.* According to Officer Diaz, throughout the conversation, Appellee kept looking back and glancing at the hoodie. *Id.* at 24. After making these observations, Officer Diaz began to question Appellee:

Q: Do you live here?

A: Yes, I do.

Q: Well, do you have an ID card or keys to the property so I can be on my way?

A: No, no my people live here.

Q: Well, are your people home to vouch for you, because you know, this building is not occupied?

A: No, no, they're on the way to pick me up.

A: No, they're on the way. We're going to go to the Rite-Aid, they're going to pick me up.

N.T, 11/03/2016, at 24-5.

Immediately after the questioning Officer Diaz told the Appellee to step down to his right. *Id.* at 25. The Appellee tried to walk past Officer Diaz who then told him to "stand over here, give me a second." *Id.* Appellee did not attempt to run at any time before, during, or after the encounter. *Id.* at 45. At this point he called over to his partner, Police Officer Sisca, to keep an eye on the Appellee while Officer Diaz searched the hoodie for a gun. *Id.* at 25. Officer Diaz based his belief on a video he watched where "guys were grabbing guns out of the cars and they're parked on the street." *Id.* at 26. Officer Diaz also stated that the way Appellee was looking at the hoodie and the fact that he denied owning it, were also reasons why he wanted to search the hoodie. *Id.* at 26. At Officer Diaz' request, Officer Sisca rode his bike across the street to keep any eye on Appellee while Officer Diaz searched the hoodie. *Id.* at 27, 58.

When Officer Sisca crossed the street Appellee was standing in front of the steps next to Officer Diaz. *Id.* at 58. Officer Sisca immediately noticed that Appellee was wearing tight cargo pants with pockets and that there was a bulge in his right pants pocket. *Id.* at 58-9. Based on his experience as both a military and Philadelphia police officer, he believed the bulge to be a gun. *Id.* at 61. According to Officer Sisca he had a brief conversation with Appellee during which he noticed his eyes were extremely watery and that his body was shaking. *Id.* at 63. Officer Sisca then testified that Appellee said "I have illegal pills in my pocket and they're my father's." *Id.* at

3

65. He was then patted down for officer safety where Officer Sisca felt a bulge of the pill bottle in his left pocket. *Id.* at 66. He then continued the pat down and felt a bulge consistent with a firearm. *Id.* He was not patted down until after he mentioned the "illegal pills." *Id.* at 74. The gun was taken out of the pocket and Appellee was placed under arrest. *Id.* Officer Sisca testified that Appellee was not free to leave. *Id.* at 75. He further stated that Miranda warnings were not given to him at any time during the encounter, *id.* at 74-5, and further implied that he is not in the habit of giving Miranda warnings by stating that "[w]e don't do that. The detectives do." *Id.*

Officer Sisca testified that in the past, he has seen people in the 1633 West Susquehanna address; he believed them to be the landlord, owner, or property workers. *Id.* at 71-2. Officer Sisca also stated that he did not believe the property to be abandoned. *Id.* at 73.

## II.    DISCUSSION

The Commonwealth claims that this Court erred in granting Appellee's Motion to Suppress all physical evidence and statements. This claim is without merit.

When reviewing the ruling of a suppression court, the appellate court must determine if the factual findings are supported by the record. When it is the Commonwealth who has appealed, only the evidence of the defense and so much of the evidence for the Commonwealth, fairly read in the context of the records as a whole, remains uncontradicted. Assuming that there is support in the record, the appellate court may reverse the suppression only if the legal conclusions drawn from those facts are in error. *See, Commonwealth v. Bomar*, 826 A.2d 831 (Pa. 2003).

Fourth Amendment jurisprudence has created three different categories of interactions between citizens and the police. The first is a "mere encounter" which does not require any level of suspicion, but also allows the citizen being questioned to leave or not respond. *See, Florida v.*

4

*Bostick*, 501 U.S. 429 (1991); *Commonwealth v. Ellis*, 662 A.2d 1043, 1047 (Pa. 1995). The second, an "investigative detention", must be supported by reasonable suspicion; the citizen is subject to a brief period of detention but is not under arrest. *Ellis*, at 1047. The final category is an arrest or "custodial detention", which must be supported by probable cause. *Id.*

## A. Mere Encounter

If a police interaction becomes too intrusive, a mere encounter may escalate into an investigatory detention or seizure. *Commonwealth v. Boswell*, 721 A.2d 336, 339-40 (Pa. 1998). Our Commonwealth's highest Court in *Boswell* articulated an objective test to determine if a seizure has occurred:

> A court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter. In applying this test, it is necessary to examine the nature of the encounter. Circumstances to consider include, but are not limited to, the following: the number of officers present during the interaction; whether the officer informs the citizen they are suspected of criminal activity; the officer's demeanor and tone of voice; the location and timing of the interaction; the visible presence of weapons on the officer; and the questions asked.

*Boswell*, at 340.

In the instant case, the interaction between Officer Diaz and Appellee clearly starts off as a mere encounter. After Seeing Appellee sitting on the steps of 1633 West Susquehanna, and the door to the property ajar, Officer Diaz approached Appellee and engaged him in conversation. N.T, 11/03/2016, at 23. Officer Diaz then began questioning Appellee regarding his identification and home address. *Id.* at 24. Based on the responses to his questions and his belief that Appellee was giving him untruthful answers because "[he] already knew the answer", *id.* at 46, Officer Diaz ordered the Appellee to "...step down over here." *Id.* at 25. As Appellee tried to walk away from him, he was told to "stand over here, give me a second." *Id.* He was not free to leave. *Id.* at 46. Officer Diaz called for Officer Sisca to join him. *Id.* At this point, based

5

on Officer Diaz's actions, and his own testimony, the interaction escalated into something more than a mere encounter.

## B. Investigatory Detention

To conduct a limited search for concealed weapons, an officer must possess a justified belief that the individual, whose suspicious behavior he is investigating at close range, is armed and presently dangerous to the officer or to others. *Terry v. Ohio*, 392 U.S. 1. 19-20 (1968); *Commonwealth v. Allen*, 725 A.2d 737, 740 (Pa. 1999). In assessing the reasonableness of the officer's decision to frisk, we do not consider his "unparticularized suspicion or 'hunch,' but [rather] ... the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry*, at 27.

In deciding whether reasonable suspicion exists for an investigatory stop, the court must see if the facts available to the officer at the time of the stop would warrant a man of reasonable caution in the belief that the action taken was appropriate. This is done by examining the totality of the circumstances. *Commonwealth v. Zharir*, 751 A.2d 1153, 1156 (Pa. 2000). Unlike probable cause, there is a lesser showing needed to demonstrate reasonable suspicion in terms of both quantity or content and reliability. *Id.*

Among the factors to be considered in forming a basis for reasonable suspicion are tips, the reliability of the informants, time, location, and suspicious activity, including flight. *Commonwealth v. Freeman*, 757 A.2d 903, 908 (Pa. 2000). (noting that "nervous, evasive behavior such as flight is a pertinent factor in determining reasonable suspicion"); *Zharir*, 751 A.2d at 1157 (stating that the expectation of criminal activity in a given area and nervous or evasive behavior are factors). Mere presence in a high crime area does not form the basis for reasonable suspicion. *Commonwealth v. Cook*, 735 A.2d 673, 677 (Pa. 1999). This developed standard is very narrow

and requires a "particularized and objective basis for suspecting the *particular person stopped* of criminal activity." *Commonwealth v. Ayala*, 791 A.2d 1202, 1209 (Pa. Super. 2002) (citing *In re D.M.*, 781 A.2d 1161, 1163 (Pa. 2001) (emphasis in original). The Court in *Ayala* reiterated previous rulings:

> [I]n order for a stop to be reasonable under *Terry* [ ], the police officer's reasonable and articulable belief that criminal activity was afoot must be linked with his observation of suspicious or irregular behavior on the part of the particular defendant stopped. Mere presence near a high crime area ... or in the vicinity of a recently reported crime ... does not justify a stop under *Terry*. Conversely, an officer's observation of irregular behavior without a concurrent belief that crime is afoot also renders a stop unreasonable.

791 A.2d at 1209 (citations omitted).

Here there was no indication that criminal activity was afoot and that Appellee was armed and dangerous, nor does the totality of circumstances justify Officer Diaz subjecting Appellee to an investigatory detention. The Appellee was sitting on the steps doing nothing. N.T, 11/03/2016, at 23. Even upon engaging the Appellee in conversation and observing his actions in looking at the hoodie, Officer Diaz failed to articulate, even upon questioning by this Court, any reasonable basis for suspecting a firearm under the hoodie. His entire belief was based on a shooting that occurred in the vicinity up to a week prior, a video he watched where "guys were grabbing guns out of the cars and they're parked on the street, " and the way Appellee was looking at the hoodie and the fact that he denied owning it. *Id.* at 26.

Under these circumstances, this Court did not err in concluding that Appellee was effectively seized the moment Officer Diaz instructed him to remain. Therefore this Court did not address Officer Sisca's observations, as they occurred after the unlawful seizure[2]. The Commonwealth's claim is without merit.

---

[2] This Court finds Officer Sisca's testimony that Appellee stated "I have illegal pills in my pocket and they're my father's" to be incredible.

7

## III.   CONCLUSION

In summary, this Court has carefully reviewed the entire record and finds no harmful, prejudicial, or reversible error, and nothing to justify the granting of the Commonwealth's request for relief.   For the reasons set forth above, the judgment of the suppression court should be affirmed.


BY THE COURT:

Roxanne E. Covington
April 24, 2017

8

*Commonwealth v. Al Lik Lanier*                    CP-51-CR-0009868-2015
                                                   3709 EDA 2016

## AFFIDAVIT OF SERVICE

I hereby certify that I am this day serving the foregoing Court Order upon the person(s), and in the manner indicated below, which serves to satisfies the requirement of Pa. R. Crim. P 114:

Defense Attorney:    Erin Boyle, Esquire
                     Edward C. Meehan, Jr. & Associates
                     211 N. 13th Street, #701
                     Philadelphia, PA 19107

Type of Service:    (X) First Class Mail       ( ) Certified       ( ) Personal Service

District Attorney:   Hugh J. Burns Jr., Esquire
                     Chief, Appeals Unit
                     Philadelphia District Attorney's Office
                     Three South Penn Square
                     Philadelphia, PA 19107-3499

Type of Service:    (X) Inter-departmental Mail   ( ) Certified       ( ) Personal Service

Date: April 24, 2017

Vazken Zerounian,
Law Clerk to the Honorable Roxanne E. Covington