J-A18033-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL CHEATOM | : | |
| | : | |
| Appellant | : | No. 1851 WDA 2019 |

Appeal from the Judgment of Sentence Entered November 26, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0008523-2018

BEFORE: OLSON, J., NICHOLS, J., and MUSMANNO, J.

DISSENTING STATEMENT BY MUSMANNO, J.:**FILED: DECEMBER 15, 2021**

I respectfully dissent from the Majority's conclusion that the nature of the chalky pill bottle and the notebook were "readily apparent" to Sergeant Gault. Rather, I would reverse the suppression court's ruling and remand for further proceedings absent that evidence and all evidence obtained as a result of fruit of the poisonous tree.

Initially, the Majority concludes that "nothing in the record establishes the order in which Sergeant Gault observed each item and when he concluded that the notebook related to controlled substances." **See** Majority at 7. I respectfully disagree. Both our Supreme Court, and this Court, have previously determined that pill bottles themselves are not contraband. **See Commonwealth v. Stevenson**, 744 A.2d 1261, 1266-67 (Pa. 2000); **see also Commonwealth v. Hudson**, 92 A.3d 1235, 1242 (Pa. Super. 2014)

(abrogated on other grounds) (wherein this Court concluded that a police officer could not seize pill bottles in plain view, despite partially removed labels, because the Officer testified that it was not immediately apparent that the pill bottles contained illegal drugs; he did not know what the pill bottles contained; and he had to call Poison Control to determine that the drugs were illegal narcotics).

In my view, the uncontradicted testimony of Sergeant Gault reveals that he opened the chalky pill bottle *prior* to making his conclusions about the owe sheet. At the suppression hearing, Sergeant Gault testified that he viewed two pill bottles, one containing rubber bands and the other having a chalky coating that he could not see through. *See* N.T. (Suppression Hearing), 3/25/19, at 16-17, 25. After viewing these pill bottles, Sergeant Gault testified that he *opened* the chalky pill bottle and viewed multiple differently colored pills. *See id.* at 17-18, 25. Sergeant Gault also testified that there was an open notebook near the two pill bottles. *See id.* at 18, 29. Sergeant Gault specifically testified that, based upon the "**totality of the circumstances of *everything* that I saw that night led me to conclude that**[] **it was probably an owe sheet or a ledger or some sort related to drugs**." *See id.* at 30 (emphasis added). Furthermore, Sergeant Gault testified that, despite his years of narcotics experience, he had never seen a chalky pill bottle like the one in this case. *See* N.T. (Suppression Hearing), 3/25/19, at 26-27. Sergeant Gault further testified that he was *unable* to

determine what the chalky pill bottle contained *prior to opening it*. **See id.** at 17, 25 (wherein Sergeant Gault testified that he could see that the pill bottle contained pills, but he could not identify the kind of pills).

Thus, Sergeant Gault's uncontradicted testimony clearly established that the contents of the chalky pill bottle were not readily apparent to Sergeant Gault, and that Sergeant Gault made no conclusions regarding the owe sheet until *after* he had opened the chalky pill bottle and viewed its contents. **See Stevenson**, **supra**; **Hudson**, **supra**. Consequently, Sergeant Gault's search of the chalky pill bottle was unsupported by probable cause, and his conclusion, as well as the subsequently obtained search warrant, regarding the owe sheet, constituted fruit of the poisonous tree. **See Stevenson**, **supra**; **Hudson**, **supra**.

Moreover, the record reflects that Sergeant Gault was at Cheatom's residence in response to a *burglary* call. **See** N.T. (Suppression Hearing), 3/25/19, at 5-6. Upon arrival, Sergeant Gault received express permission to enter Cheatom's home to search for *burglars*. **Id.** Based upon the facts of this case, and the limited scope of consent to search Cheatom's residence, I cannot conclude that Cheatom's consent to search extended to Sergeant Gault's warrantless search of the chalky pill bottle. **See Commonwealth v. Valdivia**, 195 A.3d 855, 862 (Pa. 2018) (stating that "[i]f consent is given voluntarily, the ensuing search *must be conducted within the scope of that*

*consent*[, and t]he standard for measuring the scope of an individual's consent is one of [`]objective reasonableness[']) (emphasis added).

Accordingly, I respectfully dissent from the Majority that the nature of the chalky pill bottle and the notebook were readily apparent to Sergeant Gault. On this basis, I would reverse the suppression court's ruling and remand for further proceedings, absent all evidence acquired from Sergeant Gault's unlawful search and seizure, as well as the subsequent warrant which led to the discovery of the firearm.