**COMMONWEALTH of Pennsylvania,**
**Appellant**

**v.**

**Joseph NEWMAN, Appellee.**

Superior Court of Pennsylvania.

Submitted July 23, 2013.

Filed Jan. 6, 2014.

Reargument Denied March 11, 2014.

Hugh J. Burns, Jr., Assistant District Attorney, Philadelphia, for Commonwealth, appellant.

Joseph C. Santaguida, Philadelphia, for appellee.

BEFORE: BENDER, J., PANELLA, J., and FITZGERALD, J.*

OPINION BY BENDER, J.:

The Commonwealth appeals from the order of the trial court granting Appellee's suppression motion and denying the Commonwealth's motion for reconsideration of the same. After careful review, we affirm.

The trial court summarized the facts adduced at the suppression hearing as follows:

The facts of this case were long and drawn out as it involved police surveillance of numerous drug transactions in a known drug area over an hour and a half time period prior to the [Appellee]'s arrival at the scene. The testifying officers admitted that [Appellee] was not observed in any of the money for drugs transactions, but was stopped after he was seen receiving a black plastic bag from a person under police watch. [Ap-

pellee] was the only occupant of the vehicle at all times relevant.

The Commonwealth first presented the testimony of Police Officer Warren who stated that on August 31st, 2011, at approximately 11:00 a.m., he was conducting narcotics surveillance in the 5500 block of Blakemore Street in the City of Philadelphia. He specified an area in front of 5536 Blakemore Street as the area he was surveilling at that time. He testified that he observed numerous black males, later identified as Messrs. Tarpley, Taylor, Butts and Whiley, in addition to an unknown black male, conduct what he believed to be several narcotics transactions at that location. He described each of the narcotics transactions that he observed during the time in detail.

Some of the individual buyers involved in those transactions were stopped by various back-up/take down police officers and were found to be in possession [of] crack cocaine. The buyers were both on foot and in motor vehicles.

At approximately 12:30 p.m. on that date, all of the males previously identified left the area of 5536 Blakemore Street and proceeded to walk to an area on Woodlawn Street. Officer Warren testified that he received information from another member of his take down team that the officer observed Mr. Whiley walk out of an alley with a black plastic bag. [Appellee] then pulled up to Mr. Whiley on the 5500 block of Blakemore Street in a gray Grand Marquis motor vehicle.

Police Officer Warren testified that he observed Mr. Whiley put the black bag in [Appellee]'s car and then watched the [Appellee] as he left the area. He further testified that he relayed this infor-

* Former Justice specially assigned to the Superior Court.

mation to a member of his backup team, specifically, Police Officer Ellis.

Another Police Officer's testimony was stipulated to between counsel. It was entered on the record that if Police Officer Nosik were called to testify, he would have stated that he had observed Mr. Tarpley, another of this group of males previously mentioned, enter a rear alley on Woodlawn Street and exit the alley with a black plastic bag which he gave then to Mr. Whiley. This was the bag that Mr. Whiley gave to [Appellee]. This bag went from Mr. Tarpley to Mr. Whiley to the [Appellee].

The Commonwealth next called Police Officer Ellis. He testified as to his experience and training, including conducting over 1,000 vehicle stops. He indicated he was part of the take down team for the 14th District Narcotics Enforcement Team on August 31st, 2011. He further testified that based on information received from Police Officer Warren, he stopped [Appellee]'s vehicle after he activated his lights and sirens.

According to Officer Ellis, [Appellee] did not immediately pull over, but did so after approximately 20 to 30 seconds. He also said he followed [Appellee]'s vehicle for approximately one to one and a half blocks before he attempted to stop him. He did not testify to any unusual movements or actions by [Appellee] during the entire time that he was able to observe him.

After [Appellee] pulled over and stopped, Officer Ellis testified he exited his vehicle and approached [Appellee]'s driver's side, identifying himself as a police officer. He then told [Appellee] to shut off the vehicle's engine and to exit his vehicle. He further testified

that [Appellee] was initially belligerent and yelled at him, but did eventually comply with his directives.

Police Officer Ellis testified as he was concerned about the presence of a firearm in [Appellee]'s vehicle, as he is with all vehicles that he stops in this type of situation. His concern for officer safety was the reason that he had [Appellee] exit the vehicle.

Officer Ellis immediately saw the black plastic bag on the floor of [Appellee]'s vehicle. He then felt that bag for the presence of a firearm but did indicate he felt what he described as glass vials in the bag, which he believed to be crack cocaine, as that is the manner that this drug was sold in this area. He then testified he immediately put [Appellee] in handcuffs. No weapon was found on [Appellee] or in the car.

Trial Court Opinion (TCO), 10/12/13, at 1–4.[1]

The Commonwealth charged Appellee with possession, possession with intent to deliver (PWID), and conspiracy (to PWID). Appellee filed a motion to suppress the physical evidence (the vials of crack cocaine), alleging the contraband was seized in violation of his Fourth Amendment rights. A suppression hearing was held on June 28, 2012, where Officer Ellis and Officer Warren were the only testifying witnesses. At the conclusion of that hearing, the trial court granted Appellee's motion to suppress. Although it determined that police had probable cause to stop Appellee's vehicle, the trial court nevertheless ruled that Officer Ellis' warrantless search which uncovered the crack vials was conducted in the absence of exigent circumstances.

---

1. The record does not clearly establish how the subsequent search of the car and seizure of the bag and its contents occurred. It is not clear whether the police obtained a warrant based upon the initial search of the bag.

The Commonwealth filed a motion for reconsideration of the order granting suppression, arguing that Appellee failed to establish a legitimate expectation of privacy in the searched vehicle and, in any event, that the seizure fit within a recognized exception to the warrant requirement. On July 13, 2012, the trial court held a reconsideration hearing to consider the Commonwealth's motion. The reconsideration motion was denied, upholding the previous order granting suppression.

The Commonwealth filed a timely notice of appeal and a timely Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The Commonwealth now presents the following question for our review:

> Did the lower court err in suppressing a bag of crack cocaine a police officer saw in plain view in the car defendant was driving, where defendant failed to establish a legitimate expectation of privacy in the car and the seizure was, in any event, proper?

Commonwealth's Brief at 4.

The nature of the Commonwealth's claim is, in fact, three distinct alternative claims; however, all of the three claims assert the trial court abused its discretion in granting Appellee's suppression motion. The Commonwealth first alleges that Appellee failed to establish a legitimate privacy interest in the vehicle he was driving and, therefore, Appellee could not contest the warrantless search that exposed the contraband. Alternatively, the Commonwealth alleges the applicability of one or two exceptions to the warrant requirement: 1) the plain view exception; and/or 2) the limited automobile exception. We will address these claims *ad seriatim.*

The applicable standard of review when the Commonwealth appeals from a suppression order is as follow:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Baker,* 946 A.2d 691, 693 (Pa.Super.2008) (quoting *Commonwealth v. Barber,* 889 A.2d 587, 592 (Pa.Super.2005)).

### Expectation of Privacy

■■ Whether a defendant has a legitimate expectation of privacy in the property searched is a component of the merits analysis of the suppression motion. *Commonwealth v. Millner,* 585 Pa. 237, 888 A.2d 680, 691 (2005); *see also Commonwealth v. Enimpah,* 62 A.3d 1028, 1032–33 (Pa.Super.2013) (distinguishing the Commonwealth's burden of production at the merits phase of a suppression hearing with the defendant's burden of persuasion regarding his privacy interest in the property searched). "The determination whether defendant has met this burden is made upon evaluation of the evidence presented by the Commonwealth and the defendant." *Commonwealth v. Burton,* 973 A.2d 428, 435 (Pa.Super.2009).

■■ Whether a defendant has a legitimate expectation of privacy in an area subjected to a search by police is a composite test of the defendant's subjective expectation and the objective reasonableness of that expectation:

> An expectation of privacy is present when the individual, by his conduct, ex-

hibits an actual (subjective) expectation of privacy and that the subjective expectation is one that society is prepared to recognize as reasonable. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances.

*Commonwealth v. Brundidge,* 533 Pa. 167, 620 A.2d 1115, 1118 (1993) (internal citations and quotation marks omitted).

The Commonwealth argues that Appellee

failed to satisfy his burden of proving a legitimate expectation of privacy in the car where he placed his cocaine. The record at the suppression hearing established only that [Appellee] was driving the gray Grand Marquis. Controlling authority has repeatedly held that that is insufficient to establish a legitimate expectation of privacy; a defendant is required to prove that he either owned the car or had the owner's authority to be driving it.

Commonwealth's Brief at 13.

The trial court found several factors supporting its determination that Appellant had established a legitimate expectation of privacy in the vehicle. TCO at 6. Consequently, the Commonwealth simply misconstrues the evidentiary record when it states that Appellee's driving of the vehicle was the only evidence of his expectation of privacy in that vehicle. In addition to the fact that Appellee was clearly operating the vehicle in question at the time it was stopped, the uncontradicted testimony of Officer Ellis established that Appellee vigorously objected to being stopped by police. N.T., 6/28/12, at 30. The trial court also noted that Appellee was alone in the vehicle, and that he made no attempt to flee when stopped. The totality of these facts, and the absence of any facts tending to prove otherwise, adequately demonstrate that Appellee possessed a reasonable expectation of privacy in the vehicle he was driving. The Commonwealth's claim lacks merit.

Moreover, the Commonwealth also misstates, or at least overstates, the applicability of previous decisions of this Court that considered the impact of a defendant's operation of a vehicle on the reasonableness of his expectation of privacy in that vehicle. The Commonwealth cites *Commonwealth v. Cruz,* 21 A.3d 1247 (Pa.Super.2011), and *Commonwealth v. Burton,* 973 A.2d 428 (Pa.Super.2009), for the proposition that the sole act of driving does not demonstrate any privacy interest in the vehicle. Those cases most certainly *do not* stand for that proposition, much less assert it explicitly.

In *Cruz,* we concluded, at best, that the act of driving did not overcome *other* evidence presented by the Commonwealth that weighed against Cruz's expectation of privacy in the vehicle. In that case, police stopped a vehicle after observing that the driver fit the description of a suspect reported over the police radio dispatch. *Cruz,* 21 A.3d at 1248. Evidence was presented by the Commonwealth that indicated that Cruz failed to produce a license, vehicle registration, and/or proof of insurance when requested by the officer who conducted the stop. That officer also testified that Cruz provided "five or six different names, and also different dates of birth." *Id.* at 1248–49. The officer then "ran the vehicle identification number, but found no result in Pennsylvania." *Id.* at 1249. Weighed against the evidence that he had no privacy interest in the vehicle, Cruz's actual physical control of the vehicle at the time of the stop was of little consequence.

*Burton,* a case cited by the Commonwealth and relied on by the *Cruz* Court, also fails to support the blanket proposition that the sole act of driving does not demonstrate a legitimate privacy interest in the vehicle. In *Burton,* the police's investigation revealed that Burton did not own the vehicle in which he was stopped, he was not licensed to drive a motor vehicle, and he offered no evidence "to explain his connection to the vehicle or his connection to the registered owner of the vehicle." *Burton,* 973 A.2d at 436. Thus, the *Burton* Court concluded Burton "failed to demonstrate that he had a reasonably cognizable expectation of privacy in a vehicle that he did not own, that was not registered to him, and for which he has not shown authority to operate." *Id.*

In both *Burton* and *Cruz,* the circumstances were such that the evidence presented by the Commonwealth cast serious doubt that the defendants in those cases had a legitimate expectation of privacy in the vehicles they were operating. However, this Court has never ruled that the act of driving or operating the stopped vehicle, alone, cannot establish a legitimate privacy interest in the driven vehicle *where no evidence to the contrary exists.* Nevertheless, as *Burton* and *Cruz* dictate, the mere fact that a defendant is operating a motor vehicle will not, without more, sustain a finding that the operator had a reasonable expectation of privacy in the operated vehicle where other evidence suggests he or she had no such reasonable expectation of privacy. The Commonwealth's argument that *Burton, Cruz,* and related cases establish that operation of vehicle can never sustain such a finding is simply meritless.[2]

### Plain View Exception

■ The Commonwealth argues, alternatively, that the warrantless search was permissible under the plain view exception. However, in its Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, the Commonwealth only raises two claims; that the Appellee had no expectation of privacy in the vehicle and that the seizure was permissible under the limited automobile exception to the warrant requirement. Accordingly, we conclude that the Commonwealth waived any claim pertaining to the plain view exception by failing to present that claim to the trial court in its 1925(b) concise statement. *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306, 309 (1998) ("Any issues not raised in a 1925(b) statement will be deemed waived.").

■■ Nevertheless, even if we were to reach the Commonwealth's plain view exception claim, it is clearly meritless. "The plain view doctrine permits the warrantless seizure of evidence in plain view when: (1) an officer views the object from a lawful vantage point; and (2) it is immediately apparent to him that the object is incriminating." *Commonwealth v. Ballard,* 806 A.2d 889, 891–92 (Pa.Super.2002) (internal quotation marks and corrections omitted). In this case, in order to discern the incriminating nature of the contents of the black plastic bag, Officer Ellis testified he reached into Appellee's vehicle to check the black plastic bag for weapons and "squeezed it and felt it." N.T., 6/28/2012, at 32. As such, even if the bag was viewed from a lawful vantage point in satisfaction of the first prong of the *Ballard* test, the bag itself was not incriminating in nature, and the contents were not visible from the

---

**2.** We also note that the facts of the instant case demonstrate that regardless of Appellee's expectation of privacy in the vehicle he was driving, he clearly had a privacy interest in the black plastic bag. Because of our disposition regarding the vehicle, however, we need not separately address that issue.

officer's vantage point. It was not, therefore, "immediately apparent" that the bag or its contents were "incriminating" and, thus, the plain view exception was not applicable to the facts of this case. *Ballard, supra.* Consequently, had the Commonwealth not waived the claim, we would nevertheless find that it lacks merit.

### Limited Automobile Exception

■ Finally, the Commonwealth claims that search was permissible under the limited automobile exception to the warrant requirement. We disagree.

Our Supreme Court has defined the federal automobile exception to the warrant requirement as follows:

> For Fourth Amendment purposes, the police may conduct a warrantless search of a vehicle where probable cause exists. *Carroll v. United States,* 267 U.S. 132, 147–56, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Even where a vehicle is essentially seized and immobilized, the Fourth Amendment does not preclude a warrantless search of it if probable cause exists. *Chambers v. Maroney,* 399 U.S. 42, 51, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). A warrantless search of a vehicle is reasonable under the Fourth Amendment because of the mobility of a vehicle, *Carroll,* [267 U.S.] at 153 [45 S.Ct. 280], ... and the reduced expectation of privacy an individual has in a vehicle's contents. The United States Supreme Court explained:
>
> > One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects.... It travels public thoroughfares where both its occupants and its contents are in plain view.

*Commonwealth v. McCree,* 592 Pa. 238, 924 A.2d 621, 629 (2007) (quoting *United States v. Chadwick,* 433 U.S. 1, 12, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977)).

In *McCree,* our Supreme Court declined to adopt "the full federal automobile exception" under Article I, § 8 of the Pennsylvania Constitution. *Id.* at 629–30. Nevertheless, our Supreme Court has

> adopted a limited automobile exception under Article I, § 8. "While many in our society have a great fondness for their vehicles, it is too great a leap of logic to conclude that the automobile is entitled to the same sanctity as a person's body." We have described two reasons why exigent circumstances allow a warrantless search or seizure of a vehicle under Article I, § 8: (1) a vehicle is mobile and its contents may not be found if the police could not immobilize it until a warrant is secure; and (2) one has a diminished expectation of privacy with respect to a vehicle. Thus, even though privacy protections are implicated under Article I, § 8, the heightened privacy concerns involved in a seizure from an individual's person are not present where an object is seized from a vehicle.
>
> We have allowed warrantless seizures "where police do not have advance knowledge that 'a particular vehicle carrying evidence of crime would be parked in a particular locale, ... the exigencies of the mobility of the vehicle and of there having been inadequate time and opportunity to obtain a warrant rendered the search [without a warrant] proper.'" Conversely, when the police have ample advance information that a search of an automobile is likely to occur in conjunction with apprehension of a suspect, a warrant has been held to be required before the automobile may be searched.

*Id.* at 630 (internal citations omitted).

Here, the trial court determined that police stopped Appellee based upon proba-

ble cause that he was somehow involved in the narcotics transactions that police had observed just prior to Appellee's interaction with Mr. Whiley. The Commonwealth asserts that the police had no advance knowledge that Appellee's vehicle would be part of their investigation, and that there was inadequate time and opportunity to obtain a warrant. However, because we disagree with the trial court that police had probable cause to stop Appellee, the limited automobile exception was not applicable in this case.

As noted, *supra*, "[t]he suppression court's conclusions of law ... are not binding on an appellate court[.]" *Baker*, 946 A.2d at 693. Furthermore, "[i]t is well settled that, even though an order is based on erroneous reasoning, this Court may affirm if the result is correct for any reason." *Commonwealth v. Brown*, 550 Pa. 580, 708 A.2d 81, 86 (1998). Moreover, "[w]hat facts and circumstances amount to probable cause is a question of law." *McCarthy v. De Armit*, 99 Pa. 63, 69 (1881).

Here, the "testifying officers admitted that [Appellee] was not observed in any of the money for drugs transactions, but was stopped after he was seen receiving a black plastic bag from a person under police watch." TCO, at 1–2. There was no testimony or evidence tending to demonstrate that the black plastic bag had been utilized by the purported drug dealers, including Mr. Whiley, to facilitate their illicit activities. It was an ordinary grocery bag that was unlike what the drug dealers were using to distribute narcotics in the previously observed transactions. Furthermore, when Mr. Whiley put the bag in Appellee's car, the police did not observe an exchange for money or other valuables.

The trial court does not explain how it arrived at its conclusion that police developed probable cause to stop Appellee with any degree of specificity, other than to simply assert the applicable standard. The trial court merely states that: "Upon the conclusion of the motion hearing, the Court disagreed with [Appellee]'s position that the police had no reasonable suspicion to stop the [Appellee]. Based on the totality of the circumstances, the police did have reasonable suspicion, as well as probable cause, to stop [Appellee]'s vehicle." TCO at 4.

Given the totality of the circumstances in this case, we agree with the trial court that police had a reasonable suspicion sufficient to stop Appellee's vehicle and conduct further investigation. However, we conclude that police did not have probable cause to stop Appellee's vehicle for suspicion of participation in the observed drug distribution operation. Absent probable cause, the warrantless search that occurred was not excused by the limited automobile exception. Accordingly, the Commonwealth's final claim lacks merit.

Order *affirmed.*

FITZGERALD, J., concurs in the result.