J-S10001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROMEL ANTHONY, | |
| Appellant | No. 1381 EDA 2013 |

Appeal from the Judgment of Sentence April 15, 2013
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0013889-2012

BEFORE:  GANTMAN, P.J., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED MARCH 31, 2015**

Appellant, Romel Anthony, appeals from the judgment of sentence imposed following his bench conviction of person not to possess a firearm, carrying a firearm without a license, and carrying a firearm in public in Philadelphia.[1]  Appellant challenges the trial court's denial of his motion to suppress evidence.  We affirm.

The trial court aptly summarized the testimony and evidence presented in this case as follows:

> On September 16, 2012, at approximately 1:20 a.m., Police Officer Charles Waters observed Appellant driving a 2012 Nissan Altima traveling southbound on the 3600 block of North Broad Street going in and out of traffic without signaling.  After

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), and 6108, respectively.

Appellant sped past several vehicles while in the parking lane at Broad and Tioga Streets, Waters activated his lights and sirens and pulled Appellant's vehicle over at 3300 North Broad Street. Waters had been a police officer for 15 years, participating in several narcotics, gun and robbery arrests in that immediate area.

Upon approaching the vehicle, Waters observed a female sitting in the passenger seat. She was later identified as Appellant's girlfriend, Valerie Brown.[2] Waters asked Appellant for license, registration, and insurance, to which Appellant responded that he did not have identification on him. Brown told Waters that the vehicle was a rental and provided the rental agreement from the glove compartment. The rental agreement did not authorize Appellant as the renter of the car. Waters asked Appellant if he had a driver's license and at that point Appellant began to delay before answering the officer's questions. Because Waters was working alone and was concerned for his safety, he opened the car door to frisk Appellant for weapons.

However, before Waters touched Appellant or ordered Appellant out of the vehicle, Waters saw the handle of a handgun pointed upwards in between the driver's seat and the center console. Waters placed Appellant in handcuffs and recovered the gun, which was identified as a Ruger .9 millimeter semi-automatic with one round in the chamber and nine rounds in the magazine. After recovering the gun, Waters ran Appellant's name through the computer and determined that he did not own a valid driver's license. Consequently, Waters conducted "Live Stop" procedures, wherein the vehicle was inventoried and towed.[3] Appellant also received tickets for careless driving and for not having a license.

Ivory Robinson testified that she had rented the vehicle Appellant was operating. Robinson had given permission to her

_____

[2] At the time of the stop, Appellant lived with Ms. Brown and her sister, Ivory Robinson. (*See* N.T. Suppression Motion, 2/19/13, at 34-36; Appellant's Brief, at 8, 10).

[3] *See* 75 Pa.C.S.A. § 6309.2(a).

sister, Valerie Brown, to operate the vehicle but had not given permission to Appellant. Robinson testified that Brown had just had a miscarriage and that Appellant and Brown were on their way to the hospital.[4]

(Trial Court Opinion, 10/10/13, at 1-2) (record citations omitted).

On December 20, 2012, Appellant filed a motion to suppress evidence of the firearm. On February 19, 2013, the trial court held a suppression hearing and denied the motion, finding, *inter alia*, that Appellant lacked a reasonable expectation of privacy in the vehicle.[5] Appellant elected to waive a jury trial and he proceeded immediately to a bench trial. At the conclusion of trial, the court found him guilty of the above-mentioned charges. On April 15, 2013, the court sentenced Appellant to a term of not less than five nor more than ten years' incarceration, followed by two years' probation. This timely appeal followed.[6]

Appellant raises two issues for our review:

---

[4] Officer Waters testified that Appellant did not advise him that he and Ms. Brown were on the way to the hospital, and Appellant provided him with no explanation as to why they were in the vehicle. (*See* N.T. Suppression Motion, 2/19/13, at 28-29, 33). The trial court stated that it accepted as credible Ms. Robinson's testimony, with the exception of her testimony regarding the miscarriage, which did not "ring true[.]" (*Id.* at 54; *see also* Trial Ct. Op., at 4 n.4 ("the [c]ourt did not find credible Ivory Robinson's testimony about the timing of the miscarriage") (record citation omitted).

[5] The court also found that Officer Waters would have inevitably discovered the gun during the "Live Stop." (N.T. Suppression Motion, 2/19/13, at 60).

[6] Pursuant to the trial court's order, Appellant timely filed a concise statement of errors complained of on appeal on May 31, 2013. *See* Pa.R.A.P. 1925(b). The trial court entered a Rule 1925(a) opinion on October 10, 2013. *See* Pa.R.A.P. 1925(a).

- 3 -

1. Did the [t]rial [c]ourt err by finding that Appellant did not have a legitimate expectation of privacy in the vehicle which was searched?

2. Did the [t]rial [c]ourt err by holding that the firearm which was recovered would have been recovered pursuant to the "inevitable discovery" doctrine[]?

(Appellant's Brief, at 3).

Appellant's issues on appeal challenge the trial court's denial of his motion to suppress.

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.
>
> Further, [i]t is within the suppression court's sole province as fact finder to pass on the credibility of witnesses and the weight to be given their testimony.

*Commonwealth v. Gillespie*, 103 A.3d 115, 118 (Pa. Super. 2014) (citations and internal quotation marks omitted).

In his first issue, Appellant argues that the trial court erred in determining that he had no legitimate expectation of privacy in the rental vehicle he was driving. (*See* Appellant's Brief, at 9-12). Appellant asserts

- 4 -

that he had a connection to the vehicle because he lived with the person who rented the vehicle, Ms. Robinson, and because Ms. Brown, who did have permission to operate the vehicle, was his passenger. (*See id.* at 10). He maintains that because he was driving the vehicle with its keys, it can be inferred that Ms. Brown gave him permission to drive. (*See id.*). This issue does not merit relief.

"To prevail on a motion to suppress, the defendant must show that he or she has a privacy interest which has been infringed upon." *Commonwealth v. Arthur*, 62 A.3d 424, 428 (Pa. Super. 2013), *appeal denied*, 78 A.3d 1089 (Pa. 2013) (citation and footnote omitted). Our Supreme Court has recently explained:

> To be sure, under our jurisprudence, the defendant bears the burden of persuasion with respect to his privacy interest. . . . The Commonwealth may concede the privacy interest, choosing to contest only the legality of police conduct; if it does so, the defendant's "reasonable expectation of privacy" need not be established. However, if the evidence of the Commonwealth, the party with the burden of production, shows the defendant lacked such a privacy interest, the burden of establishing the contrary is on the defendant.
>
> . . . [I]t is worth noting that in analyzing the merits of a suppression motion, the trial court may, indeed, treat the defendant's privacy interest as a "threshold" or "preliminary" matter. That is to say, if the evidence shows there was no privacy interest, the Commonwealth need prove no more; in terms of the court's review, it need go no further if it finds the defendant has not proven a reasonable expectation of privacy. . . . [A]s it relates to the parties' presentation of evidence, our cases and the Rules of Criminal Procedure make clear that the Commonwealth has the burden of production, to give the court evidence allowing that conclusion. Once it places the issue

before the court, as a basis for denying suppression, the defendant may prove the contrary. . . .

***Commonwealth v. Enimpah***, 106 A.3d 695, 701-02 (Pa. 2014) (citations and footnotes omitted).

Whether a defendant has a legitimate expectation of privacy in an area subjected to a search by police is a composite test of the defendant's subjective expectation and the objective reasonableness of that expectation:

An expectation of privacy is present when the individual, by his conduct, exhibits an actual (subjective) expectation of privacy and that the subjective expectation is one that society is prepared to recognize as reasonable. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances.

***Commonwealth v. Newman***, 84 A.3d 1072, 1076-77 (Pa. Super. 2014), *appeal denied*, 99 A.3d 925 (Pa. 2014) (citation omitted).

Here, relying on ***Commonwealth v. Burton***, 973 A.2d 428 (Pa. Super. 2009) (*en banc*), the trial court determined that Appellant lacked a reasonable expectation of privacy in the rental vehicle. (***See*** Trial Ct. Op., at 3-4). Upon review of the record and relevant caselaw, we agree with the trial court.

In ***Burton***, ***supra***, a police officer stopped the defendant for a routine traffic violation. ***See id.*** at 434. When the officer asked the defendant for license, registration and insurance information, the defendant produced only a non-driver's identification card. ***See id.*** A computer check disclosed that

the defendant was not a licensed driver, and police ultimately determined that he was not the owner of the vehicle. *See id.* An *en banc* panel of this Court determined:

> In the instant case, the vehicle was not owned by Appellant. The vehicle was not registered in Appellant's name. Appellant offered no evidence that he was using the vehicle with the authorization or permission of the registered owner. Appellant offered no evidence to explain his connection to the vehicle or his connection to the registered owner of the vehicle. Appellant failed to demonstrate that he had a reasonably cognizable expectation of privacy in a vehicle that he did not own, that was not registered to him, and for which he has not shown authority to operate.

*Id.* at 436 (citing *Commonwealth v. Jones*, 874 A.2d 108, 119-20 (Pa. Super. 2005) (holding that driver of rental car did not have privacy interest sufficient to challenge constitutionality of search where he was not named lessee on rental agreement, named lessee was not in vehicle, and he was not authorized to drive vehicle)).

Here, Appellant attempts to distinguish *Burton* by relying on *Newman*, *supra*, in which this Court affirmed the trial court's grant of the defendant's motion to suppress. (*See* Appellant's Brief, at 10-11); *see also Newman*, *supra* at 1074. However, we agree with the Commonwealth that Appellant's reliance on *Newman* is misplaced. (*See* Commonwealth's Brief, at 9). In *Newman*, a police officer stopped the defendant's vehicle after observing his involvement in a suspected drug transaction. *See Newman*, *supra*, at 1074. The defendant vigorously objected to the stop by police.

- 7 -

*See id.* at 1077. He was alone in the vehicle and did not attempt to flee. *See id.* The Commonwealth presented no evidence tending to prove that Appellant did not own the vehicle or that another party owned it. *See id.* Under these circumstances, this Court declined to disturb the trial court's finding that the defendant had a reasonable expectation of privacy in the vehicle "**where no evidence to the contrary exists**." *Id.* at 1078 (emphasis in original). However, the *Newman* Court observed that *Burton* and related cases "dictate [that] the mere fact that a defendant is operating a motor vehicle will not, without more, sustain a finding that the operator had a reasonable expectation of privacy in the operated vehicle **where other evidence suggests he or she had no such reasonable expectation of privacy**." *Id*. (emphasis added).

In the instant case, unlike in *Newman*, there was ample evidence suggesting that Appellant had no privacy interest in the vehicle. The record reflects that Appellant was driving a vehicle owned by a rental car company, and that he was not an authorized driver named on the rental agreement. (*See* N.T. Suppression Motion, 2/19/13, at 12, 36). Appellant did not have a drivers' license. (*See id.* 14, 18). Ms. Robinson testified that she rented the vehicle from the rental company and that Ms. Brown had her permission to use it. (*See id.* at 36-37, 40-41). However, she testified that Appellant did not have permission to drive the vehicle because he does not have a license. (*See id.* at 37, 41).

Upon review, we conclude that "Appellant failed to demonstrate that he had a reasonably cognizable expectation of privacy in a vehicle that he did not own, that was not registered to him, and for which he has not shown authority to operate." **Burton**, **supra**, at 436; **see also Commonwealth v. Maldonado**, 14 A.3d 907, 911-12 (Pa. Super. 2011) (reversing trial court's grant of motion to suppress where defendant failed to offer any evidence to demonstrate that he was authorized to use vehicle belonging to his girlfriend on day in question). Although Appellant argues that permission to drive the vehicle can be inferred from the facts that he drove with keys and Ms. Brown was his passenger, (**see** Appellant's Brief, at 10), this assertion contradicts Ms. Robinson's clear testimony that he did not have permission to drive the vehicle. (**See** N.T. Suppression Motion, 2/19/13, at 37, 41). Further, the evidence demonstrated that he lacked any connection to the owner of the vehicle, the rental car company.

Accordingly, because Appellant failed to "show that he [had] a privacy interest which has been infringed upon," **Arthur**, **supra** at 428, in the face of ample evidence to the contrary, **see Enimpah**, **supra** at 701-02, we conclude that the trial court properly denied his motion to suppress. **See Gillespie**, **supra** at 118. Appellant's first issue does not merit relief.[7]

_____

[7] Because of our disposition of Appellant's first issue, it is unnecessary to address his remaining issue on appeal. **See Enimpah**, **supra** at 702 ("[I]f the evidence shows there was no privacy interest, the Commonwealth need
*(Footnote Continued Next Page)*

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/31/2015

_____

*(Footnote Continued)* ————

prove no more; in terms of the court's review, it need go no further if it finds the defendant has not proven a reasonable expectation of privacy").