J-S83036-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| JAMUAL OVERBY | : | |
| | : | |
| Appellee | : | No. 3032 EDA 2016 |

Appeal from the Order September 16, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0008677-2015

BEFORE:  GANTMAN, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED JANUARY 30, 2018**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Philadelphia County Court of Common Pleas, which granted the suppression motion of Appellee, Jamual Overby.[1,2]  We affirm.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case.  Therefore, we have no reason to

---

[1] Appellant's first name is spelled variously throughout the certified record as both "Jamual" and "Jamaal."

[2] Pursuant to Pa.R.A.P. 311(d), the Commonwealth has certified in its notice of appeal that the trial court's suppression order substantially handicapped or terminated the prosecution of the Commonwealth's case.  Accordingly, this appeal is properly before us for review.  **See Commonwealth v. Cosnek**, 575 Pa. 411, 421 836 A.2d 871, 877 (2003) (stating Rule 311(d) applies to pretrial ruling that results in suppression, preclusion or exclusion of Commonwealth's evidence).

restate them.

The Commonwealth raises the following issue for our review:

DID THE [TRIAL] COURT ERR IN SUPPRESSING EVIDENCE, INCLUDING A FIREARM AND DRUGS FOUND IN THE MINIVAN [APPELLEE] WAS DRIVING, WHERE THE POLICE SAW SOME OF THE DRUGS IN PLAIN VIEW DURING A LAWFUL TRAFFIC STOP AND, THUS, HAD PROBABLE CAUSE TO SEARCH THE VAN AND ARREST [APPELLEE]?

(Commonwealth's Brief at 4).

Our scope and standard of review when the Commonwealth appeals from a suppression order are as follows:

[T]his Court may consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the record as a whole, remains uncontradicted. In our review, we are not bound by the suppression court's conclusions of law, and we must determine if the suppression court properly applied the law to the facts. We defer to the suppression court's findings of fact because, as the finder of fact, it is the suppression court's prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony.

*Commonwealth v. Hudson*, 92 A.3d 1235, 1241 (Pa.Super. 2014), *appeal denied*, 630 Pa. 734, 106 A.3d 724 (2014) (internal citations omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Glynnis D. Hill, we conclude the Commonwealth's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (**See** Trial Court Opinion, filed February 27, 2017, at 4-9) (finding: officers observed Appellee's vehicle had broken brake light, which

justified lawful traffic stop; during stop, Officer Scott noticed Appellee had pocketknife tucked into his waistband and asked Appellee to step out of vehicle for officer safety; Officer Scott testified that he had no intent to arrest Appellee for possession of pocketknife; while Appellee exited vehicle, Officer Scott observed in plain view three loose pills in driver's side-door compartment; Officer Scott unequivocally testified that he could not immediately identify pills with any certainty as over-the-counter, prescription, legal, or illegal, based on appearance alone; Officer Scott did not know incriminating nature of pills until after he seized and inspected them, reported their description to poison control, and received confirmation that pills were contraband; absent probable cause or warrant, search of Appellant's vehicle was unconstitutional; all evidence recovered from illegal search was properly suppressed).  Accordingly, we affirm based on the trial court opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/30/2018

- 3 -

## IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA :     TRIAL DIVISION
APPELLANT                               :
V.                                     :     CP-51-CR-0008677-201 **FILED**
                                       :
JAMUAL OVERBY                    :     3032 EDA 2016     **FEB 27 201**

                                      **Criminal Appeals ၊**
### OPINION                 **First Judicial District ၊**

This opinion addresses the Commonwealth's appeal of this Court's September 16, 2016

order granting the Defendant's Motion to Suppress Evidence. The issues raised by the

Commonwealth lack merit for the following reasons.

## I. CASE HISTORY

On June 1, 2015, police arrested Jamual Overby (Defendant) for illegal possession of

narcotics and firearms. The Defendant was charged with Possession With Intent to Distribute a

Controlled Substance (PWID) (F), Possession of a Controlled Substance (M), Possession of a

Firearm Prohibited (F2), Firearms Carried Without a License (F3), and Carrying Firearms in

Public (M1).

On August 31, 2016, the Defendant filed a Motion to Suppress Evidence.[1] On September

6, 2016, the Honorable Glynnis D. Hill conducted a Motion to Suppress Hearing and held the

case under advisement.[2] On September 16, 2016, Judge Hill granted the Defendant's Motion to

Suppress Evidence.

CP-51-CR-0008677-2015 Comm v. Overby, Jamual
Opinion



7911727161

---

[1] The Defendant contended the search of his vehicle violated his rights secured to him by the Fourth and Fourteenth Amendments to the U.S. Constitution, Article 1 Section 8 of the Pennsylvania Constitutions, and the Pennsylvania Rules of Criminal Procedure.

[2] On September 7, 2016 the Defendant's Motion to Suppress was further held under advisement pending receipt of the Notes of Testimony.

1

On September 26, 2016, the Commonwealth of Pennsylvania filed an interlocutory appeal to the Superior Court and a 1925(b) statement alleging:[3]

1. The trial court erred in granting the Defendant's motion to suppress on the grounds that the officer did not immediately recognized the loose pills in plain view as illegal.

## II. FACTS OF THE CASE

On June 1, 2015, Philadelphia Public Housing Authority (PHA) Officers Nathan Scott and Andrew Cikanovich were in a marked unit patrolling the Wilson Park Housing Development in Philadelphia.[4] The officers had been assigned to patrol Wilson Park because of the Development's high rate of illegal drugs, gun violence, and gang related crimes.[5] At approximately 3:56pm, Officers Scott and Cikanovich were parked at a stop sign on 26th and Jackson.[6] While parked, they saw the Defendant driving a red Dodge Caravan down Jackson Street from 26th to 25th street.[7] They noticed that the rear middle break light was out.[8] Officer Scott then stopped the Defendant on the 2400 block of Fitzgerald.[9]

Officer Scott approached the driver's side of the vehicle where the Defendant was seated, and his partner Officer Cikanovich approached the front passenger side of the vehicle where a male passenger was seated.[10] When Officer Scott approached the Defendant, he asked for his license, registration, and insurance.[11] Officer Scott also asked the Defendant if there were any

---

[3] The Commonwealth filed a Statement of Matters Complained of on Appeal in anticipation of an order Pursuant to Pa. R.A.P. 1925(b).

[4] N.T., September 2, 2016, pg. 9-10. The officers were located at cross streets 25th and Jackson in Philadelphia.

[5] Id. at 12, 39.

[6] Id. at 13-14, 64.

[7] Id. at 14, 65.

[8] Id.

[9] Id. at 14-16. Officer Scott testified that they waited to pull the Defendant over until he made a left turn onto Fitzgerald Street because the vehicle could not be safely pulled over on the 25th block due to concrete pillars from a freight railway along the street.

[10] Id. at 16, 17.

[11] Id. at 17.

2

drugs or weapons he should be made aware of in the vehicle.[12] The Defendant stated no.[13] When the Defendant reached over to his glove box to retrieve his information, his shirt lifted. Officer Scott observed the tip of a pocket knife tucked into the waistband of the Defendant's pants.[14]

Officer Scott then asked the Defendant to step out of the vehicle.[15] However, Officer Scott testified that he did not arrest (and had no intentions of arresting) the Defendant for the pocket knife.[16] As the Defendant stepped out, Officer Scott noticed **three loose** oval shaped **gray pills** in the bottom compartment of the vehicle door, **along with four small Altoid mint containers.**[17] **Officer Scott testified he did not know what the pills were, whether legal or illegal, prescription or over the counter,** but his training and experience gave him reason to suspect they might be prescription pills.[18] Officer Scott retrieved the loose pills from the door compartment, took them back to his police car, and called poison control. Meanwhile, the Defendant and the other passenger were made to wait at the rear of the vehicle facing towards Officer Scott's police car.[19] **Officer Scott described the pills to poison control, who eventually informed Officer Scott that the pills were Oxycodone 20 milligrams.**[20]

**After Officer Scott learned the identity of the pills,** the Defendant was placed under arrest.[21] Officer Scott then went back into the vehicle to conduct a search.[22] Officer Scott

---

[12] Id. at 17, 55-56. On cross examination, Officer Scott confirmed that his PARS report was accurate, but nowhere in the report did it mention that he questioned the Defendant about weapons in the vehicle. On redirect, Officer Scott stated that the report does not always document everything that is done, especially habitual actions such as license and registration checks.
[13] Id. at 17.
[14] Id. at 17-18, 43-45.
[15] Id. at 19, 99.
[16] Id. at 18-19, 23-25, 48-49.
[17] Id. at 19-21, 26, 47-48. The vehicle's door contained a compartment on the bottom of the door that protruded out, allowing Scott to see its contents while standing alongside the car as the Defendant exited the vehicle. See Appendix A for example of Altoid containers and Oxycodone 20 mg pills.
[18] Id. at 22-23, 48-49. Officer Scott did not know the designation of the loose pills when he first observed them.
[19] Id. at 21, 23, 25, 103. The Defendant was not arrested for possession of the knife.
[20] Id. at 23-24, 49. Officer Scott testified that he spoke to badge number 47 at poison control.
[21] Id. at 24, 49.
[22] Id. at 25, 49.

removed the four Altoid containers he observed earlier in the vehicle door compartment and examined their contents.[23] Each tin contained various pills inside.[24]

During the subsequent search of the vehicle, Officer Cikanovich recovered a black and silver revolver handgun from the center console.[25] The officers also recovered a box of ammunition from the trunk, and $1,238 from the Defendant's pockets.[26]

## III. DISCUSSION

### I. The Trial Court Did Not Err When it Granted the Defendant's Motion to Suppress Evidence

The Commonwealth asserts that the trial court erred when granting the Defendant's Motion to Suppress Evidence on the grounds that the Officer did not immediately recognize the loose pills in plain view as illegal. The Commonwealth's contention lacks merit.

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution safeguards Pennsylvanians against warrantless searches and seizures. Pa. Const. Art. I, § 8. A warrantless search is only proper where certain enumerated exceptions apply, and police have probable cause to believe a crime has been or is being committed. Com. v. Petroll, 738 A.2d 993, 998–99 (Pa. 1999). Exceptions to the warrant requirement include actual consent, implied consent, search incident to arrest, and exigent circumstances. Id. In order to effect a warrantless search, police officers must have probable cause to search and exigent circumstances must exist. To search a vehicle without a warrant, the limited automobile exception requires probable cause, but "no exigency beyond the inherent mobility of a motor vehicle is required." Com. v. Gary, 91 A.3d 102, 138 (Pa. 2014). In Com. v. Newman, the

---

[23] Id. at 25-26.
[24] Id. at 27, 49.
[25] Id. at 60.
[26] Id. at 61-63.

4

Pennsylvania Supreme Court found that absent probable cause, a warrantless search for illegal drugs was not covered by the limited automobile exception. 84 A.3d 1072, 1080 (Pa. Super. 2014). In order to satisfy probable cause for a warrantless vehicle search, the Commonwealth must satisfy the Plain View Doctrine. Com. v. Milyak, 493 A.2d 1346, 1348 (Pa. 1985).

The Plain View Doctrine permits officers to establish probable cause and conduct a warrantless search and seizure where an incriminating object is in plain view of the officer. In order for the Commonwealth to show that the warrantless search was permitted under the Plain View Doctrine, the Commonwealth must prove that: (1) the officer viewed the object from a lawful vantage point and (2) it was **immediately apparent to the officer the object was incriminating.** Com. v. Newman, 84 A.3d 1072, 1078 (Pa. Super. 2014).

To satisfy the first prong of the Newman test, officers must view the incriminating object from a lawful vantage point. Newman, 84 A.3d at 1078. In Com. v. Colon, the court held the totality of the circumstances gave the officers probable cause to stop a vehicle. 777 A.2d 1097, 1102 (Pa. Super. 2001). After the vehicle's occupants were arrested, an officer secured the vehicle. Id. at 1099, 1104. Standing outside of the vehicle, the officer saw a matchbox with the word "TURB" written on it protruding from under the front seat.[27] Id. at 1099. After searching the matchbox, the officer learned it contained bags of heroin. Id. The court held that the matchbox was observed in plain view. The court further reasoned that there can be no legitimate expectation of privacy where a police officer views an object that is "entirely visible to him as a private citizen." Id. at 1097.

---

[27] Officer Joyce in Colon testified that "Turbo" is a common name stamped on heroin packets, and that he believed "TURB" stood for "Turbo." Additionally, the officers had just seized four packets of heroin labeled "Turbo" from the defendant's person.

The second Newman prong requires that it be **immediately apparent to the officer that the object he views in plain sight is incriminating.** Newman, 84 A.3d at 1078. In Com. v. Hudson, **police officers recovered three prescription pill bottles from the center console of the defendant's car.** Com. v. Hudson, 92 A.3d 1235, 1237 (Pa. Super. 2014). **Two of the bottles' labels were partially removed while the label on the third bottle was intact and had the defendant's name on it.** Id. at 1237. **An officer conducting a protective sweep of the car saw the bottles in plain view.** Id. at 1237, 41. Not knowing what the pills were, the officer retrieved the pills from the vehicle and called poison control to identify the pills. Id. at 1242. At trial, the officer also testified he did not know what the pills were and confirmed that he had to call poison control in order to identify the pills in the bottle. Id. In Hudson, the Superior Court suppressed the pills. The Court held that the three prescription pill bottles were in plain view, but it reasoned that the incriminatory nature of the pills was not immediately apparent to the officer. Id. at 43.

In our case, the Commonwealth has satisfied the **first prong** of the Newman test.[28] The Defendant's car was spotted with its tail light out, giving the officers a justification to conduct a traffic stop under Vehicle Code, 75 Pa.C.S. § 4303(b). During the stop, Officer Scott noticed the Defendant had a pocket knife tucked into his waistband and asked the Defendant to step out of the vehicle.[29] The Fourth amendment permits an officer to require drivers to step out of their vehicles if the officer believes his safety is at risk. Pennsylvania v. Mimms, 434 U.S. 106, 111

---

[28] Officer Scott testified that he did not place the Defendant under arrest for possessing the knife. N.T. 9/2/2016, p. 23-25. He testified that the knife was approximately 3-4 inches long when folded and 7-8 inches long when extended to its full length. Id. p. 54. Officer Scott asked the Defendant to step out of the car and had him sit on the ground at the rear of the vehicle, but did not arrest the Defendant until after he spoke to poison control and identified the pills as Oxycodone 20 mg. Under The Philadelphia Code Title 10 § 10-820(2), "no person shall use or possess any cutting weapon upon the public streets or upon any public property at any time." A cutting weapon includes "any knife or other cutting instrument." This is a summary offense.

[29] N.T. 9/2/2015, p. 23-25, 54.

6

(1977). However, Officer Scott made it clear that he was not going to arrest the Defendant for the pocket knife.

While the Defendant was stepping out of the vehicle, Officer Scott observed three loose pills in the driver's side door compartment. As in Colon, Officer Scott observed the pills from a legal vantage point as he stood outside the vehicle. Therefore, the first prong of the Newman test was met.

However, the Commonwealth has failed to satisfy the second Newman prong. Like the officer in Hudson, Officer Scott testified that he did not know whether the loose pills were illegal.[30] **Officer Scott unequivocally testified on the record that he could not identify the pills with any certainty as being over the counter, prescription, legal or illegal by their appearance alone.[31] It was only after he seized the pills, inspected them, and reported their description to poison control that the pills' incriminating nature become apparent.[32]** Officer Scott testified that he only arrested the Defendant after calling poison control to identify the pills.[33]

The major difference between Hudson and our case is that the pills in Hudson were in prescription bottles, two of which had partially removed labels.[34] Hudson, 92 A.3d at 1237. However, the immediately apparent doctrine applies in both cases. It was not immediately apparent to the officer in Hudson that a bunch of pills in two prescription bottles without the defendant's name on the bottles was contraband. Nor was it immediately apparent to Officer

---

[30] _N.T._, September 2, 2016, 22-23, 48-49.
[31] Id.
[32] Id. at 23-24, 49.
[33] Id. at 49.
[34] In Hudson, two of the prescription bottles didn't have the defendant's name on them. Additionally, Officer Scott testified that he did not place the Defendant under arrest for possession of the knife.

7

Scott that the three loose pills next to four small inconspicuous Altoid mint containers were contraband. Hence, the second prong of the Newman test fails.

In summary, Officer Scott's actions constituted an illegal search and seizure under the Fourth Amendment of the United States Constitution, and Article I, Section 8 of the Pennsylvania Constitution. Under Gary, police officers must have probable cause to search a vehicle without a warrant. However, Officer Scott never considered the folded-up pocket knife as contraband, and he testified that he never would have arrested the Defendant for the small pen knife. Hence Officer Scott needed probable cause to effectuate his search and/or seizure.

Under the Plain View Doctrine, the officers would have probable cause to arrest the Defendant and search the vehicle if they saw the pills from a lawful vantage point **and immediately recognized** the pills as contraband. However, Officer Scott's warrantless search and seizure of the loose pills in the Defendant's vehicle were not legitimized under the Plain View Doctrine. The Plain View Doctrine does not apply because the incriminating nature of the pills was not immediately apparent to Officer Scott. Officer Scott only learned and confirmed that the three pills, which clearly could have been Altoid mints, were contraband only after he did a full investigation by calling poison control to determine the legitimacy of the pills. Meanwhile, the Defendant and passenger were made to wait at the rear of the vehicle while the police went on a fishing expedition to make a case. Without probable cause or a warrant, there was an unconstitutional search and seizure. Therefore, the court did not err when it excluded the evidence seized from the vehicle and any fruits from the poisonous tree.

8

# IV. CONCLUSION

The Commonwealth contends that the Court erred by granting the Defendant's Motion to Suppress Evidence on the grounds that the officer did not immediately recognize the loose pills in plain view. However, the Court disagrees.

The warrantless search of the Defendant's vehicle and subsequent seizure were illegal. Moreover, the officers did not have probable cause to conduct a warrantless search and seizure of the loose pills. To establish probable cause to support a warrantless search, the officer's search must comply with the Plain View Doctrine. Under Com. v. Newman, an officer must see the object from a legal vantage point, and it must be immediately apparent that the object is incriminating. In our case, Officer Scott saw three loose pills in the driver's side door compartment from a legal vantage point when the Defendant stepped out of the vehicle. However, Officer Scott did not know the incriminating nature of the pills until after he confiscated them and called poison control to determine the nature of the pills. As it was not immediately apparent to the officer that the pills were incriminating, the second prong of the Plain View Doctrine was not met. For this reason, the Commonwealth's appeal should be dismissed.

By the Court,

_____
Glynnis D. Hill, Judge

9

Altoids mint containers



Altoids mints



Oxycodone 20 mg pills



**PROOF OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been served upon the following persons on the 27th day of February, 2017.

Jamual Overby
GD5453
SCI Smithfield
1120 Pike Street
P.O. Box 999
Huntingdon, PA 16652

David Walker, Esquire
1420 Walnut St. Ste. 911
Philadelphia, PA 19102-4009

Hugh J. Burns, Esquire
Philadelphia District Attorney's Office
3 South Penn Square
Philadelphia, PA 19107

2/27/2017
**DATE**

11