J-A09041-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| RONALD GRANT CHAMPNEY, | |
| Appellee | No. 714 MDA 2015 |

Appeal from the Suppression Order April 20, 2015
in the Court of Common Pleas of Schuylkill County
Criminal Division at No.: CP-54-CR-0001243-1998

BEFORE:  FORD ELLIOTT, P.J.E., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED JUNE 23, 2016**

The Commonwealth appeals from the order of the suppression court which granted the pre-trial suppression motion of Appellee, Ronald Grant Champney.[1]  Specifically, it challenges the suppression of statements Appellee made to Pennsylvania State Police Officers on May 13, 1998.  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] This interlocutory order is appealable because it is a Commonwealth appeal in a criminal case where the Commonwealth has "certifie[d] in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d); (**see** Notice of Appeal, 4/21/15, at 1); **see also Commonwealth v. Brister**, 16 A.3d 530, 534 (Pa. Super. 2011) ("The Commonwealth's good faith certification, alone, provides an absolute right to appeal; it is not required to demonstrate the need for the evidence.") (citation omitted).

This case stems from the shooting death of Roy Bensinger in 1997. Appellee was convicted of the murder of Bensinger in 1999; however, he was granted post-conviction relief, and a new trial. Prior to this trial, he filed a suppression motion seeking to suppress several statements he made while being interrogated as a suspect in the Bensinger murder investigation. We take the factual history relevant to this appeal in this matter from the suppression court opinion.

> On November 25, [1997], [Sergeant] Shinskie[, of the Pennsylvania State Police,] accompanied [Trooper] Grimm in transporting [Appellee] from the county prison to his preliminary arraignment [on unrelated arson charges]. Tpr. Grimm drove, and Sgt. Shinskie rode in the backseat with a cuffed [Appellee].
>
> At the hearing [on Appellee's motion to suppress], Sgt. Shinskie testified that [while they drove,] he was seizing upon every opportunity to talk with [Appellee] about the Bensinger case. Sgt. Shinskie allowed [Appellee] to read the arson complaint and then advised him of his ***Miranda***[2] rights. The sergeant's approach to [Appellee] was to engage in low key conversation, giving [Appellee] information that he had received during the investigation, and inviting [Appellee] to comment. On the way back from the MDJ office, [Appellee] was asked to return with the officers to the police station to make a statement. [Appellee] responded that he would have to speak to an attorney before doing so. Instead of taking him to the police station, he was returned to the prison. The Commonwealth has referenced to no incriminating statements during this conversation.
>
> [Appellee's] preliminary hearing on the arson charges occurred on December 23, 1997. He was again transported there by officers Shinskie and Grimm in the same manner as before. Sgt. Shinskie again advised [Appellee] of his ***Miranda***

_____

[2] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

rights. After some light conversation, [Appellee] said, "I see you caught David Blickley." Sgt. Shinskie testified that Blickley was an associate of [Appellee] and was suspected of committing burglaries and home invasions in the Philadelphia area. Blickley's ex-girlfriend was married to Bensinger at the time he was shot.

Sgt. Shinskie responded to [Appellee] by acknowledging that Blickley had been caught and telling [Appellee] that Blickley was giving information regarding the homicide and [Appellee's] possible involvement. [Appellee] said that he knew someone would have to take the blame. Shinskie asked if Beth Bensinger was involved, and [Appellee] responded that there was no reason for her to be involved.

On the return trip to the prison, about one hour later, Sgt. Shinskie asked [Appellee] if he shot Bensinger. [Appellee] responded, "Before I make any kind of statement, I think I should talk to Frank Cori." Sgt. Shinskie knew that Frank Cori was an attorney who had represented [Appellee]. He was returned to the prison with no more conversation of note.

The next contact by Shinskie with [Appellee] occurred on May 13, 1998. Sgt. Shinskie accompanied Detective Pummer of the Lehigh County District Attorney's Office to see [Appellee] at the prison. Detective Pummer wanted to question [Appellee] about an arson in Allentown. They met with [Appellee] in a prison conference room. [Appellee] was advised of his *Miranda* rights and signed a waiver form.

After some questions regarding arsons in Allentown and Tremont, Sgt. Shinskie told [Appellee] that he believed he could put together probable cause for homicide charges against [Appellee]. In response, [Appellee] asked what he was looking at. When Shinskie replied that he did not know, because he could not make deals, [Appellee] told him to go get Cal Shields, who was then the [Schuylkill County] District Attorney. After an unsuccessful attempt to locate Mr. Shields, Shinskie returned to the conversation with [Appellee].

When Sgt. Shinskie noted that a .30 caliber firearm was used to kill Bensinger, [Appellee] said "Yeah. The guns are kept in a locker in the basement of the home." Shinskie told [Appellee] that he understood the gun was destroyed. [Appellee] responded, "That's a lie. The gun is not destroyed. I know who has the gun. And they might have sold it or have it

somewhere. But that's a lie. It was not destroyed." When Shinskie told [Appellee] that Chris Reber was involved, [Appellee] replied, "No he's not involved. He only dropped me off."

The last conversation between Sgt. Shinskie and [Appellee] occurred on October 8, 1998. On that date, [Appellee] was arrested in the instant case. Officers Shinskie and Grimm transported [Appellee] from the county prison to their barracks. Along the way, Shinskie commented that Beth Bensinger had made some interesting statements concerning [Appellee's] involvement in the Roy Bensinger shooting. Shinskie testified that his goal was to get [Appellee] to comment. [Appellee] replied that she probably got immunity.

Also on the way, he was given the affidavits of probable cause to read and thereafter stated that it did not matter because he was going to die anyway. When Shinskie asked what [Appellee] meant, he said he had tuberculosis and was going to tell his attorney not to appeal so his death would come sooner. Once they arrived at the barracks, [Appellee] was read his **Miranda** rights and signed the waiver form.

(Suppression Court Opinion, 4/20/15, at 2-5).

On October 25, 1999, a jury convicted Appellee of murder of the first degree for the killing of Roy Bensinger, and sentenced him to death on October 26, 1999.[3] Appellee filed a direct appeal; the Supreme Court of Pennsylvania affirmed on September 24, 2003. (**See Commonwealth v. Champney**, 832 A.2d 403 (Pa. 2003), *cert. denied*, 542 U.S. 939 (2004)).

On June 1, 2005, Appellee filed a timely petition pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.S.C.A. §§ 9541-9546. The PCRA court conducted an evidentiary hearing on Appellee's petition. On June 3, 2008,

_____

[3] The trial court imposed Appellee's sentence on November 17, 1999.

the court concluded that trial counsel was ineffective for, among other things, not seeking to suppress certain statements. It granted post-conviction relief ordering that Appellee was entitled to a new trial. An evenly divided Pennsylvania Supreme Court affirmed that ruling *per curiam* on April 24, 2013. (**See Commonwealth v. Champney**, 65 A.3d 386 (Pa. 2013), *cert. denied*, 134 S.Ct. 1276 (2014)).

On February 6, 2015, prior to the new trial, Appellee filed a pre-trial suppression motion seeking to suppress the statements that he gave to Sgt. Shinskie on November 25, 1997, December 23, 1997, May 13, 1998, and October 8, 1998. The suppression court held a hearing on March 13, 2015. On April 20, 2015, it entered an order granting the motion to suppress in part and suppressing Appellee's statements from the May 13, 1998 and October 8, 1998 encounters with Sgt. Shinskie.[4] This timely appeal followed.[5]

---

[4] In its opinion, the suppression court concluded that neither party identified a statement from the November 25, 1997 encounter that the Commonwealth would want to proffer as evidence. (**See** Suppression Ct. Op., at 6). With regard to the December 23, 1997 statements, it concluded that because Appellee initiated the conversation with Sgt. Shinskie, his statements were not obtained in violation of his **Miranda** rights and should not be suppressed. (**See id.** at 9).

[5] Pursuant to the court's order, the Commonwealth filed its concise statement of errors complained of on appeal on May 18, 2015. **See** Pa.R.A.P. 1925(b). The suppression court filed its opinion on May 28, 2015, in which it referred to its April 20, 2015 opinion granting the motion to suppress. **See** Pa.R.A.P. 1925(a).

The Commonwealth raises two questions on appeal:

I. Did the [suppression] court err in granting the motion to suppress statements made to law enforcement authorities on May 13, 1998 where [Appellee] failed to make a clear and unambiguous invocation of his right to counsel?

II. Did the [suppression] court err in granting the motion to suppress statements made to law enforcement authorities on May 13, 1998 when there was a sufficient break in [Appellee's] custody to end the presumption of involuntariness established in **Edwards v. Arizona**, 451 U.S. 477 (1981)?

(Commonwealth's Brief, at 4).

Our standard of review for an appeal from the grant of a motion to suppress is well-settled:

> When the Commonwealth appeals from a suppression order, this Court may consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the record as a whole, remains uncontradicted. In our review, we are not bound by the suppression court's conclusions of law, and we must determine if the suppression court properly applied the law to the facts. We defer to the suppression court's findings of fact because, as the finder of fact, it is the suppression court's prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony.

**Commonwealth v. Hudson**, 92 A.3d 1235, 1241 (Pa. Super. 2014), *appeal denied*, 106 A.3d 724 (Pa. 2014) (citations omitted). "Where, as in the instant case, there is no meaningful dispute of fact, our duty is to determine whether the suppression court properly applied the law to the facts of the case." **Commonwealth v. Ruey**, 892 A.2d 802, 807 (Pa. 2006).

In its first issue, the Commonwealth claims that the suppression court erred in its conclusion that Appellee clearly invoked his right to counsel on

- 6 -

December 23, 1997. (*See* Commonwealth's Brief, at 19-30). Specifically, it argues that the statement, "I think I should talk to Frank Cori", was ambiguous, the suppression court failed to consider the context of the statement, and incorrectly considered the subjective belief of Sgt. Shinskie. (*Id.* at 23; *see id.* at 24-30). The Commonwealth relies on *Davis v. United States*, 512 U.S. 452 (1994), to argue that Appellee's request was equivocal and he did not clearly ask for an attorney. Thus his statements to Sgt. Shinskie on May 13, 1998 should not have been suppressed. (*See* Commonwealth's Brief, at 22-27). We disagree.

> In *Miranda*[, *supra*], the Court adopted a set of prophylactic measures to protect a suspect's Fifth Amendment right from the inherently compelling pressures of custodial interrogation. . . . [The Court] reasoned, [u]nless adequate protective devices are employed to dispel the compulsion inherent in custodial surroundings, no statement obtained from the defendant can truly be the product of his free choice.
>
> To counteract the coercive pressure, *Miranda* announced that police officers must warn a suspect prior to questioning that he has a right to remain silent, and a right to the presence of an attorney. After the warnings are given, if the suspect indicates that he wishes to remain silent, the interrogation must cease. Similarly, if the suspect states that he wants an attorney, the interrogation must cease until an attorney is present. Critically, however, a suspect can waive these rights.

*Maryland v. Shatzer*, 559 U.S. 98, 103-04 (2010) (quotation marks and some citations omitted).

> In *Edwards*, *supra*, the Supreme Court held that
>
> when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been

- 7 -

advised of his rights. We further hold that an accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards*, *supra* at 484-85 (footnote omitted).

In *Davis*, *supra*, the Supreme Court considered an interview between a suspect, Davis, and law enforcement agents wherein Davis said "[m]aybe I should talk to a lawyer." *Davis*, *supra* at 455. The interviewing agent then clarified whether Davis was "asking for a lawyer or is he just making a comment about a lawyer, and [Davis] said [`]No, I'm not asking for a lawyer[.']" *Id.* After a break, the agents continued the interview for another hour until Davis said: "I think I want a lawyer before I say anything else." *Id.* The Supreme Court concluded that in the first statement, because Davis had not unambiguously or unequivocally requested counsel, the officers were not required to immediately cease questioning. *See id.* at 460-61. It held that "after a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers **may continue questioning until and unless the suspect clearly requests an attorney**." *Id.* at 461 (emphasis added). The Court did not consider whether Davis's second statement was an ambiguous or equivocal reference to an attorney.

Here, the suppression court concluded that Appellee's statement, "Before I make any kind of statement, I think I should talk to Frank Cori", was a clear request for an attorney. (Suppression Ct. Op., at 9). The court likened Appellee's statement to the second statement in *Davis*, and

- 8 -

reasoned that "[i]n both instances, the agents in **Davis** and Sgt. Shinskie had no trouble construing the suspect's statement that he 'thinks' he wants to see an attorney as a request for counsel." (**Id.** at 12). The suppression court concluded that "[t]his request by [Appellee] for counsel before giving any further statements was clear and unambiguous." (**Id.** at 12).

After careful review, we conclude that the record supports that on December 23, 1997, Appellee made a clear request for an attorney when he said "Before I make any kind of statement, I think I should talk to Frank Cori." (Suppression Ct. Op., at 9); **see Davis**, **supra** at 461. We agree with the suppression court's conclusion that this statement properly invoked Appellee's right to counsel. Therefore, pursuant to **Edwards**, **supra**, after he clearly requested an attorney on December 23, 1997, Appellee should not have been subject to further interrogation on May 13, 1998 without an attorney present. **See id.** Therefore, we conclude that the court did not err when it suppressed Appellee's May 13, 1998 statement. **See Hudson**, **supra** at 1241. Accordingly, the Commonwealth's first issue does not merit relief.

In its second issue, the Commonwealth claims that the trial court erred and should not have suppressed Appellee's May 13, 1998 statements because "there was a sufficient break in custody that ended the presumption of involuntariness established in **Edwards**[, **supra**.]" (Commonwealth's Brief, at 30 (emphasis and most capitalization omitted); **see id.** at 30-37). Specifically, it argues that, although Appellee was incarcerated, the time

between the two interrogations should have constituted a sufficient break in custody because Appellee's custody was not the type of imprisonment that would create compelling pressure on him. (*See id.* at 35-37). We disagree.

In *Shatzer*, *supra*, the Supreme Court declined to extend the *Edwards* rule to situations where there was a sufficient break in custody between an accused's request for an attorney and re-interrogation so as to dissipate the coercive effects of custodial interrogation. *See Shatzer*, *supra* at 113-14. The court reasoned:

> It is easy to believe that a suspect may be coerced or badgered into abandoning his earlier refusal to be questioned without counsel in the paradigm *Edwards* case. That is a case in which the suspect has been arrested for a particular crime and is held in uninterrupted pretrial custody while that crime is being actively investigated. After the initial interrogation, and up to and including the second one, he remains cut off from his normal life and companions, thrust into and isolated in an unfamiliar, police-dominated atmosphere, where his captors appear to control [his] fate. That was the situation confronted by the suspects in *Edwards*, [*Arizona v.*] *Roberson*[, 486 U.S. 675 (1988)], and *Minnick* [*v. Mississippi*, 498 U.S. 146 (1990)], the three cases in which we have held the *Edwards* rule applicable. Edwards was arrested pursuant to a warrant and taken to a police station, where he was interrogated until he requested counsel. The officer ended the interrogation and took him to the county jail, but at 9:15 the next morning, two of the officer's colleagues reinterrogated Edwards at the jail. Roberson was arrested at the scene of a just-completed burglary and interrogated there until he requested a lawyer. A different officer interrogated him three days later while he was still in custody pursuant to the arrest. Minnick was arrested by local police and taken to the San Diego jail, where two FBI agents interrogated him the next morning until he requested counsel. Two days later a Mississippi Deputy Sheriff reinterrogated him at the jail. None of these suspects regained a sense of control or normalcy after they were initially taken into custody for the crime under investigation.

- 10 -

*Shatzer*, *supra* at 106-07 (quotation marks, footnote, and some citations omitted).

The *Shatzer* court then concluded that in Shatzer's case, where he was imprisoned on a prior conviction, the "lawful imprisonment imposed upon conviction of a crime does not create the coercive pressures identified in *Miranda*." *Id.* at 113. The court explained that where an inmate was already sentenced, the "interrogator has no power to increase the duration of incarceration, which was determined at sentencing." *Id.* It distinguished this situation from that "in *Edwards*, *Roberson*, and *Minnick*, [where the suspects'] continued detention as suspects rested with those controlling their interrogation, and who confronted the uncertainties of what final charges they would face, whether they would be convicted, and what sentence they would receive." *Id.* at 114.

Here, the suppression court found:

> In the instant case, [Appellee] was not a sentenced felon serving time. He was in jail only because he was awaiting trial on arson charges, and it was Sgt. Shinskie to whom [Appellee] had invoked his right to have counsel present. After doing so, [Appellee] had no opportunity to return to the normalcy of the life he had before being arrested on the arson charges. The State Police was the same agency that had filed the arson charge against [Appellee] and was asking him about the homicide.

(Suppression Ct. Op., at 15). The court then concluded that because Appellee was not a sentenced inmate, the *Edwards* rule was inapplicable and his May 13, 1998 statements should be suppressed. (*See id.* at 16).

Upon review, we conclude that the record supports the suppression court's finding of facts. **See Hudson**, **supra** at 1241. Furthermore, we conclude that because Appellee was not a sentenced prisoner who was serving a term of imprisonment, and because he was not returned to his normal life in between the two interrogations, his statements in response to Sgt. Shinskie's interrogation on May 13, 1998 were properly suppressed under the **Edwards** rule. **See Shatzer**, **supra** at 113-14; **Edwards**, **supra** at 484-85. Accordingly, the Commonwealth's second issue does not merit relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/23/2016